# United States Court of Appeals for the Federal Circuit

05-5012

MICHAEL STRICKLAND,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

John B. Wells, of Slidell, Louisiana, argued for plaintiff-appellee.

Anthony J. Steinmeyer, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief was Peter D. Keisler, Assistant Attorney General. Of counsel on the brief was Gregory R. Bart, Lieutenant Commander JAGC, Office of the Judge Advocate General, General Litigation Division, United States Department of the Navy, of Washington, DC. Of counsel were David M. Cohen, Director, Franklin E. White, Jr., Assistant Director and Gregory T. Jaeger, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Appealed from: United States Court of Federal Claims

Judge Susan G. Braden

# United States Court of Appeals for the Federal Circuit

05-5012

MICHAEL STRICKLAND,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED: September 16, 2005

_____

Before MICHEL, Chief Judge, RADER and LINN, Circuit Judges.

MICHEL, Chief Judge.

The United States ("Government") appeals the decision of the United States Court of Federal Claims granting judgment upon the administrative record in favor of the plaintiff, Michael Strickland ("Strickland"). The judgment directed that Strickland's Naval record be corrected to expunge all references to the general discharge mandated by Naval regulations following Strickland's state court conviction of a sex offense, and that he be awarded three months of constructive service to qualify him for retirement.[1] Strickland v. United States, 61 Fed. Cl. 443 (2004). The trial court judgment nullified the

---

[1] In his complaint, Strickland sought "restoration" (reinstatement) to active duty with all pay and allowances retroactive to the date of discharge. Under the Military Pay Act, 37 U.S.C. § 204 (2000), Strickland would be entitled to monetary damages from the United States upon reinstatement. Thus, the Court of Federal Claims had jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000).

decision of the Navy Assistant Secretary for Manpower and Reserve Affairs ("Assistant Secretary")[2] to leave the discharge record unchanged, treating it as ultra vires and treating the recommendation favoring correction by the Board for Corrections of Naval Records ("Board") as the final and correct decision. Because the Assistant Secretary's decision to reject the Board recommendation fell within the power expressly granted to each service Secretary by Congress in 10 U.S.C. § 1552(a)(1), we reverse and remand for adjudication on the merits of whether the Secretary's decision was arbitrary and capricious, unsupported by substantial evidence, or otherwise contrary to the law under the deferential standards for review on the administrative record.

## I. Background

Strickland served for many years in the United States Navy without incident. In 1998, however, he was arrested and charged with a sex felony. Ultimately, he pled no contest to a misdemeanor charge of indecent exposure. Consequently, the Navy separated him with a General Discharge under Honorable Conditions because Navy regulations mandated such separation for that particular type of offense. See Military Personnel Manual (MILPERSMAN) § 1910-144 (2005). In October 2001, Strickland filed a petition for relief, and the Board recommended to the Assistant Secretary that Strickland's discharge be set aside as unfair. In essence, the Board found that Strickland's plea was induced by erroneous advice from his commanding officer, who told him that such a conviction would not require his discharge. However, the Assistant Secretary disagreed with the Board's recommendation and denied Strickland's request. The Assistant Secretary found that factors other than the incorrect advice actually

---

[2] The Assistant Secretary is the Secretary of the Navy's designee for final agency decisions on correction of personal records. 32 C.F.R. § 700.324 (2004).

induced the plea, including fear of a felony conviction and incarceration, and large legal fees.

Strickland filed this action in the Court of Federal Claims seeking to overturn the Assistant Secretary's decision. On cross motions for judgment upon the administrative record, the trial court ruled in favor of Strickland. The trial court interpreted § 1552(a) to provide that the Board, not the Secretary or his designee, was the final authority regarding requests for military records corrections. The applicable portions of the statute are as follows:

> (a) (1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice . . . . [S]uch corrections shall be made by the Secretary <u>acting through boards</u> . . . .
>
> . . . .
>
> (3) Corrections under this section shall be made <u>under procedures established by the Secretary</u> concerned. In the case of the Secretary of a military department, those procedures must be approved by the Secretary of Defense.

10 U.S.C. § 1552(a) (2000) (emphases added).

The trial court interpreted the first sentence of § 1552(a)(1) to mean that Congress has empowered the Secretary with the discretion to evaluate requests for correction of a military record. <u>Strickland</u>, 61 Fed. Cl. at 451. However, the trial court found that in the second sentence, specifically the "acting through boards" phrase, Congress eliminated the Secretary's discretion once the application for correction was submitted to the Board. <u>Id.</u> at 452. In addition, the trial court found no language later in § 1552(a) that expressly authorizes the Secretary to reject or modify the position of the Board. <u>Id.</u> The trial court stated that its interpretation of § 1552(a) was consistent with

05-5012                                         3

Chappel v. Wallace, 462 U.S. 296 (1983), in which the Supreme Court stated that "Board decisions are subject to judicial review." Id. at 303. The trial court then concluded that Congress had delegated the final authority on whether to make corrections to each service's Board, not its Secretary, and ordered Strickland's Naval record corrected in accordance with the Board's recommendation. Id. at 451-52.

The Government moved for reconsideration, arguing that the trial court's decision contravened controlling precedent, namely Boyd v. United States, 207 Ct. Cl. 1 (1975), in which this court's predecessor, the United States Court of Claims, held that the Secretary has discretionary authority under § 1552(a) to disagree with the Board. Id. at 8. The Government also cited Sanders v. United States, 594 F.2d 804 (Ct. Cl. 1979), which followed and further explained Boyd, as controlling precedent.

In response to the Government's motion, the Court of Federal Claims held that Boyd was invalid and thus not controlling as it conflicted with the Supreme Court's earlier holding in Civil Aeronautics Bd. v. Delta Air Lines, Inc., 367 U.S. 316 (1961). In that case, the Court held that an agency's power is defined "not [by] what the Board thinks it should do but what Congress has said it can do." Id. at 322. That is, the agency cannot expand by regulation its powers beyond those Congress granted to it. Relying on Delta Air Lines, the trial court stated that the Boyd court had wrongly upheld the Secretary's authority to take final action because, in its view, Boyd relied on a regulation, rather than on § 1552(a)(1). Strickland v. United States, 61 Fed. Cl. 689, 690 (2004) ("Reconsideration"). Further, the trial court explained that Sanders was also invalid, determining it violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 704 (2000). The APA provides for judicial review only of "final" agency actions, yet Sanders

recognized judicial review of decisions of both the Secretary and the Board. Having found reasons to its satisfaction for disregarding these two precedents, the trial court denied the Government's motion for reconsideration.

The Government timely appealed the trial court's decision. We have subject matter jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.    Discussion

The sole issue on appeal is whether the Assistant Secretary acted outside his statutorily-granted powers when he rejected the recommendation of the Board. For the many reasons stated below, we conclude that he did not, and that the trial court erred in interpreting § 1552(a) to mandate that the Assistant Secretary cannot reject a Board recommendation.

Statutory interpretation is, of course, a question of law, which we review without deference. See, e.g., Bowey v. West, 218 F.3d 1373, 1376 (Fed. Cir. 2000). In the first sentence of § 1552(a)(1), Congress explicitly delegated to the Secretary plenary power and discretion to correct military records whenever he "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (2000). In the second sentence, Congress required that "such corrections shall be made by the Secretary acting through boards. . . ." Id. Unlike the trial court, we see nothing in the second sentence that bars the Secretary from rejecting the recommendation of the Board.

## A.

Our interpretation of § 1552(a) complies, as it must, with the express holdings of the Court of Claims in Boyd v. United States, 207 Ct. Cl. 1 (1975) and Sanders v. United States, 594 F.2d 804 (Ct. Cl. 1979). S. Corp. v. United States, 690 F.2d 1368, 1369

(Fed. Cir. 1982) ("[T]he holdings of . . . the United States Court of Claims . . . shall be binding as precedent in this court."). In Boyd, the Air Force Board for Corrections of Military Records recommended that Boyd be reinstated after he was twice deferred for promotion and mandatorily retired, but the Secretary rejected the recommendation. 207 Ct. Cl. at 5. The Boyd court squarely held that while the Secretary was required to act through the Board pursuant to § 1552, he "has by regulation authorized by statute retained the authority to take such final action on board recommendations as he determines to be appropriate." Id. at 13-14 (emphasis added).

The trial court cast aside Boyd, holding that the Secretary attempted to "expand [his] congressionally mandated authority by regulation" when he declined to adopt the Board's recommendation. Reconsideration, 61 Fed. Cl. at 690 (emphasis added). We disagree. The trial court's emphasis on the regulations is misplaced. As the Boyd court correctly stated, although the Secretary "in correcting a military record is to act through a board of civilians," Boyd, 207 Ct. Cl. at 8, the statute authorizes him to "retain[ ] the authority to take such final action on board recommendations as he determines to be appropriate." Id. In the words of the Boyd court, "[i]t is clear from the statute that the Secretary's decision is a discretionary one." Id. at 7 (emphasis added). Thus, the Secretary's limitation on Board involvement is expressly authorized by Congress.

Our predecessor court, we conclude, did not rely on the Secretary's regulation, but rather on express delegation in the statute itself. See id.; cf. id. at 14 (holding that another statute, 10 U.S.C. § 8012, gives the Secretary authority to delegate his powers to the corrections board, just as with other civilian personnel of a military service) (emphasis added). Because the Boyd court expressly discerned a sufficient statutory

grant of authority in § 1552(a), its reasoning is perfectly consistent with the Supreme Court ruling in Delta Air Lines, which simply states the legal truism that an agency cannot expand by its regulations the power Congress granted to it. 367 U.S. at 322. We hold that Boyd does not conflict with the Supreme Court holding in Delta Air Lines, on which the trial court relied. Thus, Boyd remains valid. It binds us as well as the trial court.[3]

The Government also contends that the trial court erred in disregarding Sanders as violative of the APA because, in fact, only the Secretary's decision is subject to judicial review. See Reconsideration, 61 Fed. Cl. at 691 (citing Sanders, 594 F.2d at 815). We agree with the Government. After receiving a favorable recommendation from the Air Force Board for Corrections of Military Records in his request for removal of certain officer effectiveness reports, which the Secretary adopted, Sanders unsuccessfully applied to the Board for removal of certain passovers from his record. Sanders, 594 F.2d at 808-09. The petitioner appealed to the United States Court of Claims, arguing that the Board acted arbitrarily and capriciously in rejecting his petition. Id. The court in Sanders cited the lack of a rationale for the Board's rejection and remanded the case with instructions "to make findings of fact showing the basis for its conclusions." Id. at 809. The trial court in Strickland explained that, under the APA, it

---

<sup>3</sup> Ordinarily, a trial court may not disregard its reviewing court's precedent. See Crowley v. United States, 398 F.3d 1329, 1335 (Fed. Cir. 2005) (noting that the Court of Federal Claims is required to follow Federal Circuit precedent). There are two narrow exceptions: if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision. See Bankers Trust N.Y. Corp. v. United States, 225 F.3d 1368, 1372 (Fed. Cir. 2000). Neither occurred here. Otherwise, a circuit court decision, if applicable, controls until the circuit court overrules it en banc. Id. Thus, the trial judge, believing that Boyd and Sanders contravene a Supreme Court precedent and the APA, respectively, may do no more than criticize those opinions, urging en banc revision.

only has jurisdiction to review a "final agency action" and that final decisional authority can reside in only one entity within an agency. <u>Reconsideration</u>, 61 Fed. Cl. at 691. Consequently, the trial court said that the <u>Sanders</u> court violated the APA by implying that the actions of two entities within the same agency are subject to judicial review. <u>Id.</u>

The court in <u>Sanders</u>, we conclude, made no such error. Rather, in each service, the correction board process provides for a single final agency action in every case. Initially, a service member applies for correction from the Board, and the Board assembles a record of the service member's performance.[4] Based on this record, the Board may make a recommendation on the disposition of the case, but nevertheless must forward the entire record to the Secretary. <u>See, e.g.</u>, 32 C.F.R. § 723.6 (2004) (Navy regulation). After reviewing the record and the Board's recommendation, the Secretary or his designee makes the one and only actual decision. <u>See id.</u> This decision is plainly the final agency action under the APA. Once the final decision issues, the service member may contest this final agency action in a court.

If the service member does so, the court must review the rationale underlying the Secretary's decision to determine if the decision was arbitrary, capricious, unsupported by substantial evidence, or in violation of law. <u>Sanders</u>, 594 F.2d at 811. If the Secretary adopts the Board's recommendation, then the court reviews the Secretary's decision in terms of the Board's rationale. If, however, the Secretary disagrees with the Board and rejects its recommendation, then the Secretary must provide a written statement supporting his rejection. <u>See, e.g.</u>, § 723.7 (2004) (Navy regulation). In that case, the court reviews the decision on the basis of the Secretary's written statement.

---

[4] Each branch of the military has its own regulations detailing this process. <u>See, e.g.</u>, 32 C.F.R. §§ 723.3, 723.6 (2004) (reciting Naval regulations).

We hold that a court does not violate the APA when it reviews the Secretary's decision--which incorporates either the Secretary's rationale or the Board's rationale, depending on the circumstances--because in either case the Secretary's decision is the one and only final agency action. Accordingly, we find no conflict between the holding in Sanders and the APA. Hence, Sanders too remains good law and binds us as well as the trial court.

**B.**

Even if we were to agree with the trial court holding that Boyd and Sanders are not controlling as invalid, and that § 1552 does not expressly grant the Secretary authority to reject Board recommendations, we would still have to uphold the Secretary's decision based on the consistent, continual construction of § 1552 in the applicable regulations of all four service branches. Without doubt, Congress has expressly delegated authority to the Secretary of each military department to issue regulations on the procedures to be employed in considering possible corrections under § 1552. See 10 U.S.C. § 1552(a)(3) (2000). Each service Secretary has issued such regulations, and, for each service branch, the regulations provide authority for the Secretary to override Board decisions upon following prescribed procedures. See 32 C.F.R. § 723.7 (Secretary of the Navy); id. § 581.3(g)(3) (Secretary of the Army); id. § 865.5 (Secretary of the Air Force); 33 C.F.R. § 52.64(b) (Secretary of Homeland Security for the Coast Guard). Contrary to the trial court's ruling, the statutory provision that "corrections shall be made by the Secretary acting through boards" does not unambiguously exclude the Secretary from the corrections process by divesting Secretarial authority to alter Board recommendations under all circumstances. That is

particularly apparent in light of the first sentence of § 1552(a)(1), which provides broadly that the Secretary "may correct any military record of the Secretary's department <u>when the Secretary considers</u> it necessary to correct an error or remove an injustice." (emphasis added). Accordingly, under the principles of <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), we are required to defer to the consistent, long-standing interpretation of the statute set forth in all four service branch regulations, provided it is reasonable. Here, it is reasonable. In light of the silence of the statute as to the precise role of the Secretary with respect to Board recommendations with which the Secretary disagrees, the regulations constitute a permissible form of "gap-filling" in which the agency is authorized to speak to an issue on which the statute was not explicit. See <u>Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.</u>, 125 S. Ct. 2688, 2700 (2005) ("it is for agencies, not courts, to fill statutory gaps").

In addition, Congress, aware of the decades-old interpretation of § 1552, has declined to amend the statute to nullify the regulations. Whereas the statute has been amended nine times since 1946, the changes have not negated the regulations. The Navy regulations, for example, have undergone only two minor amendments since their initial promulgation in 1952. See 10 U.S.C. § 1552 (2000). <u>Compare</u> Board for the Correction of Naval Records, 17 Fed. Reg. 10,243-46 (Nov. 11, 1952) (codified as 32 C.F.R. Part 723) <u>with</u> Miscellaneous Amendments to Board for Correction of Naval Records, 26 Fed. Reg. 12121-22 (Dec. 19. 1961) <u>and</u> Board for Correction of Naval Records, 62 Fed. Reg. 8166-70 (Feb. 24, 1997). In Congress' knowledge of the regulations interpreting and implementing § 1552, in existence for fifty years, and its

subsequent inaction, we have yet another reason to hold that Congress clearly has delegated the final authority regarding any correction of military records to the Secretary, not the correction board.

**C.**

This interpretation of § 1552(a) is uniform across the circuits. For example, the Court of Appeals for the District of Columbia Circuit has held that "the Secretary did not abuse his discretion in rejecting the Board's finding" since § 1552(a) "leaves no doubt that the final decision is to be made by [the Secretary]." Miller v. Lehman, 801 F.2d 492, 497 (D.C. Cir. 1986); see also Gottlieb v. Pena, 41 F.3d 730, 733 (D.C. Cir. 1994) (stating that § 1552(a) authorizes the Secretary of Transportation [now Homeland Security] to correct Coast Guard military records according to procedures he establishes, and thus authorizes him to establish Board decisions to be recommendations, not final decisions). Likewise, the Court of Appeals for the Ninth Circuit held that § 1552 and the applicable regulations "permit the Secretary to reject the recommendation of the Board" when, in his judgment, the recommendation is not necessary to correct an error or injustice. Barber v. Widnall, 78 F.3d 1419, 1423 (9th Cir. 1996). Other circuits too have held that the Secretary is authorized to reject a Board recommendation so long as he acts on the basis of either explicitly stated policy reasons or evidence in the record. E.g., Neal v. Sec'y of Navy, 639 F.2d 1029, 1043 (3d Cir. 1981); Horn v. Schlesinger, 514 F.2d 549, 553 (8th Cir. 1975). Indeed, this has been the uniform understanding of the Secretary's power since the statute was enacted in 1946.

**D.**

We cannot accept the trial court's reliance on the Supreme Court's decision in Chappel v. Wallace, 462 U.S. 296 (1983). In Chappel, the Supreme Court held that Navy personnel could not use the civilian courts to sue their superiors; rather, the service members must seek relief through the military justice forums, such as court martial proceedings or the correction board. 462 U.S. at 303. In dictum, the Court stated that "Board decisions are subject to judicial review." Id. The trial court interpreted this dictum to mean that all Board decisions are final agency actions which the Secretary may not alter. Strickland, 61 Fed. Cl. at 448. The issue in Chappel, however, was not whether the Board had the final decision-making authority, but whether the proper venue for personnel disputes was the civilian or military courts. Chappel, 462 U.S. at 303. The Court merely mentioned correction boards as one example of a forum available to service members seeking relief. Likewise, our cases citing Chappel do not discuss the relative powers of the Secretary and the Board. See, e.g., Porter v. United States, 163 F.3d 1304, 1324-25 (Fed. Cir. 1998) (clarifying the relationship between the Board and the Special Selection Board), cited in Strickland, 61 Fed. Cl. at 449. Hence, we hold that neither Chappel nor the Federal Circuit decisions following Chappel establish Board recommendations as a final agency action unalterable by the Secretary.

Nor are we persuaded by the trial court's reliance on two cases from the United States Court of Claims, Proper v. United States, 154 F. Supp. 317 (Ct. Cl. 1957), and Weiss v. United States, 408 F.2d 416 (Ct. Cl. 1969). The trial court opinion cites Proper and Weiss to support its holding that the final authority over corrections is vested

exclusively in the Board. Such reliance is misplaced, for neither case supports the holding below. Proper involved a request to correct the medical records of a service member diagnosed with multiple sclerosis. A retired Army general serving as an advisor to the Secretary sent a memorandum to the Assistant Secretary advising rejection of the Board recommendations. Proper, 154 F. Supp. at 324. He attached a directive denying relief, which the Secretary signed and issued. Id. The court pointed out that, contrary to statute, the Secretary had involved a member of the military in the civilian corrections process. Id. at 326. In addition, the court held that the Secretary acted arbitrarily in disregarding the civilian Board's findings, which, it found, were fully supported by the record. Id. at 326-27. The Proper court stated that "we do not suggest that the Secretary may not overrule the recommendations of the Correction Board where the findings of that Board are not justified by the record on which the findings were made." Id. at 326. Thus, rather than supporting the trial court's interpretation, Proper clearly supports our interpretation of § 1552(a).

Similarly, in Weiss, the Court of Claims held that the Secretary's rejection of the Board recommendation was unjustified because the Board recommendation was fully supported by the record and the Secretary had, instead, blindly followed the advice of a military officer. The court noted that the Secretary had routed the Board's recommendation directly to the Navy Judge Advocate General for "comment or recommendations." Weiss, 408 F.2d at 420. Based on the short time frame involved, the court concluded that the Secretary could not have reviewed the record himself nor allowed his civilian staff to review it. Id. at 420-21. The Weiss decision states: "[t]he thrust of the Proper opinion is that a Secretary of a military department cannot overrule

the recommendations of a civilian correction board on the advice of a military officer <u>unless the findings of the board are not justified by the record before it</u>." <u>Id.</u> (emphasis added). Therefore, <u>Weiss</u> too supports our holding that the final authority regarding requested corrections is vested with the Secretary.

Finally, the trial court missed the point of <u>Proper</u> and <u>Weiss</u>: Congress wanted final decisions on records corrections to be made by civilians in each military department, not uniformed officers. In both cases the Secretary effectively deferred to a professional military officer over the reasonable decision of the Board. But the Assistant Secretary and the Navy corrections board members--the only parties involved in the <u>Strickland</u> matter--are all civilians. In Strickland's case, no uniformed officer was involved in any decision-making. Thus, these two cases, which had as a precondition the involvement of a uniformed military officer, have no application here.

**E.**

Strickland, rather than defend the trial court's interpretation of § 1552(a) and its refusal to follow <u>Boyd</u>, offers an alternative ground for us to affirm the trial court's decision: <u>Boyd</u> is inapposite because it construed a prior version of § 1552(a). Section 1552(a) was amended in 1989, Strickland alleges, to delete the phrase "under procedures established by him". Strickland argues that Congress removed the "under procedures" phrase to eliminate discretionary power of the Secretary to overrule the Board. As a result, Strickland asserts, both <u>Boyd</u> and <u>Sanders</u> are inapplicable as each interpreted a "significantly different statute" than the one in effect at the time of his claim in 2001. For three reasons, we must reject Strickland's argument. First, in the 1989 amendment, Congress did not delete the phrase. It merely moved the phrase "under

05-5012                                    14

procedures established by him" from subsection (a)(1) to the newly-created subsection (a)(3).[5]  Second, moving it made no substantive change on the meaning of subsection (a) as a whole.  Third, the legislative history of the 1989 amendment contains no indication that this relocation of the phrase was intended as anything more than a housekeeping measure.  Thus, we hold that <u>Boyd</u> and <u>Sanders</u> do indeed apply to the statute in effect in 2001 and govern the outcome in this case.

### III.    Conclusion

We hold that, under the binding precedent of <u>Boyd</u> and <u>Sanders</u>, the Assistant Secretary's decision to overrule the Board recommendation was within the power granted to the Secretary by Congress in 10 U.S.C. § 1552(a)(1), as properly interpreted. Congress granted this power to Secretaries and their designees in all four service branches.  We therefore reverse the Court of Federal Claims' judgment.  We remand this case to the trial court to determine whether the Secretary's rejection of the Board recommendation was arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to the law.  We, of course, intimate no view on the merits.

<u>REVERSED</u> and <u>REMANDED</u>

---

[5]    Section 1552(a)(3) now reads "[c]orrections under this section shall be made under procedures established by the Secretary concerned." 10 U.S.C. § 1552(a)(3) (2000).