# United States Court of Appeals for the Federal Circuit

---

**WALTER N. STRAND, III,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2019-1016

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00601-TCW, Judge Thomas C. Wheeler.

---

Decided: March 3, 2020

---

LUCAS TAYLOR HANBACK, Rogers Joseph O'Donnell, Washington, DC, argued for plaintiff-appellee. Also represented by JEFFERY M. CHIOW; NEIL H. O'DONNELL, San Francisco, CA.

DANIEL KENNETH GREENE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE; STEPHEN ROBERT STEWART, Office of the Judge Advocate General, General Litigation Division, United States Department of the Navy, Washington, DC.

――――――――――――

Before REYNA, HUGHES, and STOLL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* REYNA.

HUGHES, *Circuit Judge.*

The government appeals a decision of the United States Court of Federal Claims setting aside the Secretary of the Navy's denial of Walter Strand's request to correct his military service records. Against the recommendation of a records correction board, the Secretary denied Mr. Strand's request for a six-month service credit to become eligible for military retirement benefits. Because the Secretary did not exceed his authority in rejecting the board's recommendation and substantial evidence supports his decision, we reverse and thereby reinstate the Secretary's decision to deny the correction.

I

Mr. Strand served in the Navy for roughly nineteen and a half years until June 2009 when he was discharged under other than honorable conditions for firing a gun at his estranged wife and her companion. Mr. Strand was convicted in state court of three felonies: attempted malicious wounding, attempted unlawful wounding, and use of a firearm in the commission of a felony. He was sentenced to six years in prison, with three years suspended for good behavior. Since his release, Mr. Strand has sought various "corrections" to his naval service records, including a six-

month credit so that he would have 20 years of service and be eligible for military retirement benefits.[1]

### A

In 2014, the Board for Correction of Naval Records (BCNR or Board) recommended granting Mr. Strand's requested correction. The Board weighed "the seriousness of [Mr. Strand's] disciplinary infractions" against his "overall record of more than 19 years and six months of satisfactory service [including receiving numerous medals,] . . . . his good post service conduct[,] and his early release from civil confinement due to good behavior." J.A. 32. Finding that he had "suffered long enough for his indiscretion," the Board recommended correcting Mr. Strand's record to reflect 20 years of service. J.A. 32–33. That recommendation has now been twice considered—and twice rejected—by the Secretary of the Navy.[2]

First, in February 2015, the Secretary rejected the Board's recommendation in a short, two-paragraph decision. The Secretary's decision generally referenced the seriousness of Mr. Strand's felony convictions, the Navy's core values, its practice in similar cases, and Mr. Strand's supposed "long-standing history of FAP [Family Advocacy Program] involvement and domestic violence issues."

---

[1]    As discussed below, 10 U.S.C. § 1552 authorizes corrections of military records when "necessary to correct an error or remove an injustice."

[2]    The Secretary has delegated authority to act on BCNR recommendations to the Assistant Secretary, Manpower and Reserve Affairs, SECNAVINST 5420.193 at 1–2 ¶ 3(b), who in turn delegated that authority to the Assistant General Counsel for Manpower and Reserve Affairs, Appellant's Br. 4 n.1. Here, different Assistant General Counsels issued the two rejection decisions, but for clarity we refer to both as decisions of the Secretary.

J.A. 25. Mr. Strand challenged this decision in the Court of Federal Claims, which reversed the Secretary's 2015 decision as arbitrary and capricious and instructed the Navy to retire Mr. Strand. *Strand v. United States* (*Strand I*), 127 Fed. Cl. 44, 51 (2016).

On appeal, we agreed that the Secretary's 2015 decision was not supported by substantial evidence, but we reversed and remanded to allow the Secretary an opportunity for further review. *Strand v. United States* (*Strand II*), 706 F. App'x 996, 998, 1001 (Fed. Cir. 2017) (nonprecedential). In *Strand II*, we found a lack of substantial evidence specifically because the Secretary's statement that Mr. Strand had a history of FAP involvement and domestic violence issues lacked record support. *Id*. at 1000. Recognizing that the Secretary relied on "a combination of intertwined reasons," at least one of which Mr. Strand had shown was not supported by substantial evidence, we remanded because the Secretary had not yet considered whether the Board's decision "should be upheld in the absence of any evidence of a 'long-standing history' of FAP involvement." *Id*.

On remand following *Strand II*, the Secretary considered the Board's 2014 recommendation anew and in January 2018—after inviting and receiving supplemental information from Mr. Strand—again rejected the recommendation. The Secretary this time issued a seven-page memorandum explaining the decision to deny the requested correction. The Secretary found that Mr. Strand's overall periods of service and post-service conduct did not "overcome the seriousness of the misconduct that resulted in his civilian conviction," and that the "passage of time . . . does not warrant overlooking the seriousness of the conviction that led to his discharge" and his resultant ineligibility for retirement. J.A. 283.

The Secretary also noted that two early "counseling/warning" entries added to Mr. Strand's record in

February 1992 and September 1993 gave him "clear and repeated notice" that he could be separated from service for disobeying military regulations and civilian laws.[3] J.A. 118, 121, 283.

The Secretary then described how Mr. Strand's "history of performance and conduct" did not align with each of the Navy's core values—Honor, Courage, and Commitment. J.A. 283–85. Finally, the Secretary noted that Mr. Strand's offenses were equivalent to a violation of Uniform Code of Military Justice Article 128 (Assault), which authorizes a maximum penalty of dishonorable discharge and confinement for eight years. Citing several military justice cases, the Secretary further noted that it was "very likely" Mr. Strand would have received a punitive discharge had he been prosecuted by the Navy, rather than civilian authorities. J.A. 285. The Secretary concluded:

> In sum, I commend Petitioner's efforts to engage in rehabilitation following his conviction and incarceration, as well as his efforts to rebuild his life. However, I do not find that relief is warranted and that Petitioner should be granted credited time served for retirement when, in fact, the basis for his inability to retire was not an error or an injustice, but his own deliberate misconduct despite being on clear notice of the consequences of his actions. To

---

[3] It is unclear from the record whether the 1992 and 1993 entries addressed the same underlying act(s) of misconduct. The parties take opposing stances, with Mr. Strand urging that the 1993 entry was merely a follow-up for the same misconduct that prompted the 1992 entry. Even assuming the Secretary erred in stating that Mr. Strand "again engaged in misconduct in 1993," J.A. 283, we would find this error harmless. No matter the number of early instances of misconduct, the Secretary's rejection decision is supported by substantial evidence.

> grant relief under the circumstances of this matter wholly ignores the high standards that the Navy expects our military members to demonstrate.

J.A. 285–86. The Secretary also added that Mr. Strand had already received "appropriate relief" from another records review board that upgraded his service characterization from "Under Other Than Honorable Conditions" to "General Under Honorable Conditions." J.A. 52, 286. The Secretary found this partial relief—reflecting Mr. Strand's "satisfactory service and post-incarceration efforts to rebuild his life"—further reason to deny additional relief. J.A. 286.

B

Mr. Strand filed a supplemental complaint in the Court of Federal Claims contesting the Secretary's 2018 decision. On cross-motions for judgment upon the administrative record, the Court of Federal Claims again found the Secretary's decision arbitrary and capricious. *Strand v. United States* (*Strand III*), 138 Fed. Cl. 633, 643 (2018). Specifically, the trial court found it arbitrary and capricious for the Secretary to view Mr. Strand's early counseling entries as providing notice of his obligation to comply with Navy core values that did not exist at the time of the 1992 entry;[4] and for the Secretary to engage in "hypothetical forecasting" by "comparing Mr. Strand's civil case to military cases that do not apply the same analysis." *Id.* at 641. As to consideration of Mr. Strand's 2009 convictions, the trial court determined that this Court, in *Strand II*, already "found that Mr. Strand's conduct did not constitute substantial evidence to support the Secretary's decision." *Id.*

---

[4] The government concedes that the Navy adopted its core values of Honor, Courage, and Commitment in late 1992, after Mr. Strand received his 1992 counseling entry. Appellant's Br. 9, 26.

at 642 (citing *Strand II*, 706 F. App'x at 1000).  Finally, the trial court faulted the Secretary for "fail[ing] to give any real consideration to Mr. Strand's post-service conduct." *Id.* at 643.  The court concluded that, given these deficiencies and the Board's "thorough consideration of the evidence of record," it could not uphold the Secretary's "decision to overrule the Board." *Id.*  The trial court therefore again directed the Navy to retire Mr. Strand with all appropriate back pay, benefits, and allowances. *Id.* at 643–44.

The government now appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review de novo the Court of Federal Claims' decision to grant or deny judgment on the administrative record. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004).  In reviewing an adverse decision of a records correction board, we apply the same standard of review that the Court of Federal Claims applied, without deference. *See id.*  Here we are called to review not the action of a correction board, but action by the Secretary of the Navy to overrule that correction board.  While the parties dispute the circumstances in which a service secretary may reject a board's recommendation, they agree that the substantial-evidence standard generally applies here.  That is, we must "determine whether the Secretary's rejection of the Board recommendation was arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to the law." *Strickland v. United States*, 423 F.3d 1335, 1343 (Fed. Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).

A

The statute establishing civilian military-records cor-
rection boards, such as the BCNR, provides: "The Secre-
tary of a military department may correct any military
record of the Secretary's department when the Secretary
considers it necessary to correct an error or remove an in-
justice." 10 U.S.C. § 1552(a)(1). Except in circumstances
not present here, "such corrections shall be made by the
Secretary *acting through boards of civilians* of the execu-
tive part of that military department." *Id.* (emphasis
added).

Records correction boards were first authorized in 1946
to "relieve Congress of the burden of considering private
bills to correct alleged errors and injustices in the military
system . . . ." *Martinez v. United States*, 333 F.3d 1295,
1306–07 (Fed. Cir. 2003) (en banc). Concerned that service
members returning to civilian life after World War II might
be "handicapped by bad military records created without
due process in the hurly-burly of the war," and that career
military officials "would not be much interested in effecting
corrections," Congress required the service secretaries to
act "through boards of civilians." *Boyd v. United States*,
207 Ct. Cl. 1, 14 (1975) (Nichols, J., concurring).

Under Naval Service regulations, the BCNR can take
corrective action on behalf of the Secretary in many situa-
tions. *See* 32 C.F.R. § 723.6(e)(1). But any petition that
the Secretary or the BCNR Executive Director determines
warrants Secretarial review is "reserved for decision" by
the Secretary. *Id.* § 723.6(e)(2)(iii). In Mr. Strand's case,
BCNR Executive Director Robert O'Neill—a retired Navy
JAG Corpsman—requested that the Secretary review the

Board's 2014 recommendation.[5]  In cases designated for Secretarial review, the record of proceedings "will be forwarded to the Secretary who will direct such action as he or she determines to be appropriate . . . ."  32 C.F.R. § 723.7(a).  "If the Secretary's decision is to deny relief, such decision shall be in writing and, unless he or she expressly adopts in whole or in part the findings, conclusions and recommendations of the Board, or a minority report, shall include a brief statement of the grounds for denial" satisfying 32 C.F.R. § 723.3(e)(4).[6]  *Id.*

B

This appeal raises the question of how much constraint a substantiated Board recommendation places on a Secretary's discretion to deny record correction requests.  Relying on language in *Strickland v. United States*, 423 F.3d 1335, 1340–41 (Fed. Cir. 2005), the government asserts

---

[5]    Mr. O'Neill's handwritten memo reads in full:

Please prepare this decision for [Manpower and Reserve Affairs] review.  It is my opinion, based on the seriousness of the offense and the significant grant of relief, that [the Secretary] should review this case for decision.

J.A. 35.

[6]    Section 723.3(e)(4), in turn, requires that the "brief statement of the grounds for denial" include

the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge.

that the Secretary may reject a Board recommendation "on the basis of either explicitly stated policy reasons or evidence in the record." Appellant's Br. 19 (quoting *Strickland*). In *Strickland*, we held that Board recommendations are not binding on the Secretary since "Congress clearly has delegated the final authority regarding any correction of military records to the Secretary, not the correction board." 423 F.3d at 1340; *see id.* at 1337 (concluding that the "the trial court erred in interpreting § 1552(a) to mandate that the . . . Secretary cannot reject a Board recommendation"). We did not address the merits of whether the Secretary's rejection was permissible in that instance, instead remanding for the trial court to "determine whether the Secretary's rejection of the Board recommendation was arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to the law." *Id.* at 1343. Thus, our observation that "[o]ther circuits too have held that the Secretary is authorized to reject a Board recommendation so long as he acts on the basis of either explicitly stated policy reasons or evidence in the record," *id.* at 1341, did not adopt such a standard for future cases.

For his part, Mr. Strand argues that, under precedent from our predecessor court, the Secretary may not alter a correction board's recommendation unless the board's findings are unsupported by the administrative record. Appellee's Br. 14–17. In his view, rejecting a substantiated board recommendation amounts to ignoring the board, rather than "acting through" it, as § 1552(a) requires. We acknowledge that strong language in some of our adopted precedent would seem to support Mr. Strand's position. *See, e.g.*, *Proper v. United States*, 154 F. Supp. 317, 326 (Ct. Cl. 1957) (rejecting the proposition that a secretary is "free to accept and act favorably on the [board's] findings and recommendations, or to ignore them, as he [sees] fit" because such an interpretation of § 1552 "makes the words 'acting through boards of civilian officers or employees'

superfluous" (quoting the predecessor to § 1552)); *Weiss v. United States*, 408 F.2d 416, 421 (Ct. Cl. 1969) ("The thrust of the *Proper* opinion is that a Secretary of a military department cannot overrule the recommendations of a civilian correction board *on the advice of a military officer* unless the findings of the board are not justified by the record before it." (emphasis added)).

However, as the above-quoted language in *Weiss* suggests, the decisions on which Mr. Strand relies were rendered in the context of service secretaries being influenced by—or outright adopting—the opinions of military officers in rejecting otherwise substantiated board recommendations. *See Weiss*, 408 F.2d at 420–21 (Navy Secretary rejecting a BCNR recommendation in an opinion that JAG likely prepared for the Secretary's signature); *Hertzog v. United States*, 167 Ct. Cl. 377, 385 (1964) (Army Secretary's rejection decision was "induced and influenced" by general's memorandum stating "I think the approval of this recommendation would be a very bad precedent"); *Proper*, 154 F. Supp. at 324–25 (Army Secretary merely signed an order attached to the oppositional memorandum of a retired general who was not a civilian employee of the Army).

We have since held that *Proper* and *Weiss* "have no application" without military officer involvement. *See Strickland*, 423 F.3d at 1341–42 (noting that in those cases—which "had as a precondition the involvement of a uniformed military officer"—the Secretary "effectively deferred to a professional military officer over the reasonable decision of the Board"). We therefore find these cases inapplicable here. Although BCNR Executive Director O'Neill is a retired military officer, his memo requesting Secretarial review does not constitute undue officer influence. Mr. O'Neill was a civilian employee of the Navy when he wrote the memo, *cf. Proper*, 154 F. Supp. at 325 (finding it "important" that the memo in question was "rendered by

a military officer . . . , and not by a civilian employee" of the Army); and his memo merely states that the Secretary "should review this case for decision," J.A. 35, without advocating a particular outcome of that review.

Indeed, in cases without military officer involvement, our predecessor court "ha[s] held that the Secretaries are free to . . . differ with the recommendations of [correction] boards where the evidence is susceptible to varying interpretations." *Sanders v. United States*, 594 F.2d 804, 812 (Ct. Cl. 1979) (citing *Boyd v. United States*, 207 Ct. Cl. 1, 11 (1975)). In *Boyd*, the court upheld the Air Force Secretary's rejection of a board recommendation, finding the board's conclusion "d[id] not withstand the contrary analysis and conclusion made in good faith, within the law, and without arbitrariness or caprice by the Assistant Secretary." 207 Ct. Cl. at 12–13. In so holding, the *Boyd* court applied the standard that courts "may reject the decision of a Secretary only if he has exercised his discretion arbitrarily, capriciously, in bad faith, contrary to substantial evidence, or where he has gone outside the board record, or fails to explain his actions, or violates applicable law or regulations." *Id.* at 8–9. We reaffirm that standard today.

We hold that, where a military officer has not unduly influenced the secretary's decision, a service secretary may reject the recommendation of a records correction board— even a recommendation supported by the administrative record—so long as the secretary's rejection decision is not arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to the law. *See Strickland*, 423 F.3d at 1343; *Boyd*, 207 Ct. Cl. at 8–9.

C

The Secretary's 2018 decision satisfies this standard. It must therefore be reinstated.

The Secretary's thorough consideration of the seriousness of Mr. Strand's criminal misconduct, alone, justifies his decision to deny the requested relief. The Secretary undertook a broad review of Mr. Strand's record, but in our view the heavy weight he ascribed to Mr. Strand's "cho[ice] to take a gun and attempt[] to cause his former wife and another individual substantial harm by discharging the weapon," J.A. 284, fully supports denying him credit for six months of service he did not perform.

The trial court misread our decision in *Strand II* when it stated that we "found that Mr. Strand's conduct did not constitute substantial evidence" and that we had "rejected" his prior conviction as a justification for overruling the Board's recommendation. *See Strand III*, 138 Fed. Cl. at 642–43. We took no such position. In *Strand II*, we considered an extremely brief Secretarial decision which generally relied on four "intertwined reasons" to reject the Board's recommendation. 706 F. App'x at 999–1000. Because we found no record support for one of those reasons—the alleged FAP involvement and domestic violence issues—we remanded for the Secretary to consider whether the Board's recommendation "should be upheld in the absence of any evidence of a 'long-standing history' of FAP involvement and domestic violence issues." *Id.* at 1000. We expressed no view on the hypothetical sufficiency of the other three reasons the Secretary mentioned in the 2015 rejection—(1) the seriousness of Mr. Strand's convictions; and (2) that granting relief would be inconsistent with the Navy's core values and (3) its practice in similar cases—in the absence of the unsupported domestic violence reason. *Id.* The Secretary's 2018 decision makes it abundantly clear that his decision remains the same even without evidence of FAP involvement or domestic violence issues. The trial     court's     misinterpretation     of     *Strand II*

notwithstanding, the Secretary remained free to rest his decision on the seriousness of Mr. Strand's offenses.[7]

Mr. Strand objects that Naval Service regulations prohibit denying relief solely because the original discharge decision was correctly made, citing 32 C.F.R. § 723.3(e)(2).[8] Even assuming § 723.3(e)(2) applies to decisions of the Secretary (and not only to Board consideration of initial applications), and assuming Mr. Strand's interpretation is correct, that regulation does not undermine the Secretary's 2018 decision. The Secretary did not reject the Board's recommendation simply because he thought the Navy's 2009 discharge decision was correct. Nowhere in the 2018

---

[7]    In *Strand II*, the Secretary's brief reference to Mr. Strand's "serious felonies" was not enough for us to uphold his 2015 decision, given its simultaneous reference to unsupported domestic violence issues. J.A. 25.

[8]    Section 723.3(e)(2) provides, in relevant part: The Board may deny an application in executive session if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice. The Board relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. Applicants have the burden of overcoming this presumption *but the Board will not deny an application solely because the record was made by or at the direction of the President or the Secretary* in connection with proceedings other than proceedings of a board for the correction of military or naval records.
32 C.F.R. § 723.3(e)(2) (emphasis added).

rejection decision do we find discussion of the propriety of the original discharge.  Rather, we find a full analysis of the seriousness of Mr. Strand's conduct underlying the discharge.[9]

### D

Beyond considering the seriousness of Mr. Strand's conviction-related conduct, the Secretary's seven-page memorandum also discussed several other reasons for denying the service-credit correction—more than satisfying the requirement to provide a "brief statement of the grounds for denial." *See* 32 C.F.R. §§ 723.3(e)(4), 723.7(a). Mr. Strand and the trial court take issue with various aspects of the Secretary's additional reasoning.  But none of the identified issues brings the Secretary's 2018 decision into the realm of arbitrary or unlawful agency action.[10]

---

[9]    At oral argument, Mr. Strand's counsel seemed to suggest that § 723.3(e)(2) also prohibits relying solely on the seriousness of the conduct underlying the discharge. *See* Oral Argument at 19:40–20:00 (Q: "Are you saying that because he was administratively discharged from the . . . Navy because of this felony conviction and jail time, that they can't further use that as a basis . . . for not giving him relief under the corrections board decision?    A: I'm saying it can't be the sole basis, Your Honor.") and 31:01–10 (stating that under § 723.3(e)(2) the Secretary cannot rely on "the initial incident" as "the sole basis"), http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1016.mp3. We find nothing in the text of § 723.3(e)(2) prohibiting consideration of the seriousness of prior misconduct.

[10]    Mr. Strand has moved to strike the government's reply brief, arguing that it raises new issues not presented in the government's opening brief, though addressed by the

First, both the trial court and Mr. Strand, on appeal, ascribe error to the Secretary's use of the Navy's core values to assess Mr. Strand's request for relief.  Mr. Strand objects both to the retroactive application of the core values to his 1992 conduct predating their establishment, and to the Secretary's invocation of the core values in general to overrule the Board's recommendation.  Although the Navy admittedly had not adopted its core values of Honor, Courage, and Commitment when Mr. Strand received his 1992 counseling entry, we see nothing arbitrary about analyzing his overall history of performance and conduct under the values existing at the time of the 2018 decision.  While we agree that the 1992 counseling entry could not have provided Mr. Strand notice to comply with not-yet existing standards, it still could—and did—warn him of the consequences of future misconduct.  J.A. 121 (stating that failure to adhere to cited guidelines in the future "will make you eligible for administrative separation action").  Even leaving aside Mr. Strand's early counseling entries, one does not need any degree of "notice" to know not to shoot at unarmed civilians.

As we read the 2018 decision, the Secretary merely used the core values as a general framework to assess Mr. Strand's request.  Although Mr. Strand portends that allowing this core-values framework will provide the Secretary unlimited discretion to overrule Board recommendations, we are unwilling to mandate that the Secretary take—or avoid—any particular analytical approach in his review of Board recommendations.  The

---

trial court.  We agree that the government forfeited the justiciability and waiver arguments asserted in its reply brief, and we have not considered those arguments in resolving this appeal.  Given that the government has prevailed on its other arguments, however, we deny Mr. Strand's motion as moot.

requirement that the Secretary's rejection decision not be arbitrary or capricious, unsupported by substantial evidence, or contrary to the law will continue to provide adequate accountability.

Likewise, the trial court and Mr. Strand read too much into the Secretary's citation to military justice cases and observation that Mr. Strand likely would have received harsher punishment had he been prosecuted by military, rather than civil, authorities for the shooting.  We disagree with the trial court that the Secretary "relie[d] upon" the cited cases or "use[d] these cases to justify" his decision. *Strand III*, 138 Fed. Cl. at 642.  Rather, after a full analysis of how Mr. Strand's illegal behavior did not align with the Navy's core values, the Secretary briefly delved into military justice standards to emphasize that "the nature of [Mr. Strand's] conduct leading to his civilian conviction cannot be overlooked."  J.A. 285.  Far from denying Mr. Strand's request just because he might have been punished more harshly in military court, the Secretary cited military sources simply to provide further points of comparison for assessing the nature and severity of Mr. Strand's conduct.

Finally, we reject the notion that the Secretary's decision should be reversed for insufficient consideration of Mr. Strand's positive service record and post-service conduct. True, the Secretary's 2018 decision makes little mention of the many medals, high performance marks, and promotions Mr. Strand received over the course of his career.  But there is no requirement that the Secretary's "brief statement" address every aspect of a petitioner's record. *See* 32 C.F.R. §§ 723.3(e)(4), 723.7(a).[11]

[11]   We note that the 2018 decision did acknowledge several positive aspects of Mr. Strand's record.   The

The Secretary reviewed the same administrative record as the Board and drew a different, but still supported, conclusion from it.  That the Secretary weighed certain aspects of the record differently than did the Board does not mean that the Secretary's conclusions were arbitrary or unsubstantiated.  While the Board's contrary conclusion may also be supported by substantial evidence, that conclusion is not under review here.  *See Strickland*, 423 F.3d at 1339 ("If . . . the Secretary disagrees with the Board and rejects its recommendation, . . . . the court reviews the decision on the basis of the Secretary's written statement."). "[W]hereas the Secretary in correcting a military record is to act through a board of civilians, as required by [§ 1552], he has . . . retained the authority to take such final action on board recommendations as he determines to be appropriate." *Boyd*, 207 Ct. Cl. at 8 (discussing an Air Force regulation containing the same operative language as Navy regulation 32 C.F.R. § 723.7(a)).  As we noted in *Strickland*,

---

Secretary (1) noted Mr. Strand's "*satisfactory* service, including various medals and personal awards" and his "'*good post service conduct* and his early release from civil confinement due to good behavior,'" J.A. 281 (emphases in original) (quoting J.A. 32); (2) acknowledged the personal character references and personal statements showing Mr. Strand's commitment to supporting his children and reconciliation with his ex-wife (while noting that no statement from Mr. Strand's ex-wife appears among the many statements of support), J.A. 282; (3) "commend[ed]" Mr. Strand's efforts toward post-conviction rehabilitation, J.A. 285; and (4) recognized that Mr. Strand had obtained an equitable upgrade of his service characterization, recognizing his "19.5 years of satisfactory service and post-incarceration efforts to rebuild his life", J.A. 286.

"'[i]t is clear *from the statute* that the Secretary's decision is a discretionary one.'"  423 F.3d at 1338 (alteration and emphasis in original) (quoting *Boyd*, 207 Ct. Cl. at 7).  The Secretary properly exercised the discretion given to him by § 1552(a) in considering the Board's reasoning and disagreeing with its recommendation to grant additional relief to Mr. Strand.

## III

We have considered the parties' remaining arguments and find them unpersuasive.  The Secretary acted within his discretion in rejecting the recommendation of the Board.  His 2018 rejection decision was supported by substantial evidence and was not arbitrary, capricious, or contrary to the law.  We therefore reverse the judgment of the Court of Federal Claims.

**REVERSED**

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**WALTER N. STRAND, III,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2019-1016

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00601-TCW, Judge Thomas C. Wheeler.

---

REYNA, *Circuit Judge*, dissenting.

The majority upholds an agency decision that relies on an unsupported factual finding: that Mr. Strand "engaged in misconduct in 1993." J.A. 283. Because that finding was an integral part of the Secretary's decision, our law requires that we remand to the Secretary for further review. I respectfully dissent.

The Secretary's decision is based, at least in part, on two distinct events of misconduct: one in 1992, one in 1993. The Secretary found that "in 1992, [Mr. Strand] was counseled for abuse of alcohol, which resulted in disorderly conduct, and he was issued non-judicial punishment for assault and disorderly conduct." J.A. 283. The Secretary also found that Mr. Strand "again engaged in misconduct in 1993." *Id.*

The record supports the Secretary's finding of misconduct in 1992. Two documents—a two-page "Court Memorandum" and one-page of "Administrative Remarks"—show that Strand was involved in an alcohol-related incident on February 27, 1992, and that Strand received nonjudicial punishment for violating UCMJ Article 128 (assault) and Article 134 (disorderly conduct). J.A. 119–121. The administrative remarks identify the "deficiencies in [Strand's] performance and/or conduct" as "abuse of alcohol which results [sic] in disorderly conduct." J.A. 121.

There is no similar evidence that would support the Secretary's finding that Strand "again engaged in misconduct in 1993." The Secretary cites one document in support: a single page of "Administrative Remarks," dated September 29, 1993. But the 1993 administrative remarks do not identify an act of misconduct that occurred in 1993. J.A. 118. Instead, the document identifies the "deficiencies in [Strand's] performance and/or conduct" as:

> Violation of UCMJ Articles 128 (Assault) and 134 (Disorderly conduct) as evidenced by CO's NJP of ***27 February 1992*** and documented in your service record on NAVPERS 1070/607 and NAVPERS 1070/609.

J.A. 118 (emphasis added). The 1993 administrative remarks do not reference any other dates, incidents, or misconduct. Nor does the record contain any other evidence showing a 1993 act of misconduct or related punishment.

The government admits that the record lacks support for the Secretary's finding that Strand "again engaged in misconduct in 1993." At oral argument, counsel for the government agreed that the Secretary had found two separate acts of misconduct stemming from two separate events: "[t]he Secretary's decision makes clear that the 1992 nonjudicial punishment was one event and . . . whatever the event was that resulted in the counseling entry in 1993 was a separate event." Oral Arg. at 1:45–2:13.

Counsel for the government also recognized that the record contained no support for that finding.

> Q:  The 1993 counseling is not the result of the 1992 event?
>
> A: Correct.
>
> . . .
>
> Q:  What was the 1993 event?
>
> A:  It's unclear your Honor . . . the record does not describe the event.

*Id.* at 2:55–3:05; 3:39–3:46.  When pressed, counsel for the government simply said, "I would defer to the Secretary . . . I don't have any reason to doubt the Secretary's characterization of these being two separate incidents." *Id.* at 7:34–8:05.

The Secretary expressly relied on the illusory "misconduct in 1993" when it ruled against Mr. Strand.  J.A. 283–285.  For example, the Secretary concluded that Mr. Strand failed to "rehabilitate himself while in the Naval service" because "Strand again engaged in misconduct in 1993." J.A. 283.  The Secretary also found that Mr. Strand's "conviction for felony offenses, *as well as his history of performance and conduct*, does not align with the Navy [C]ore [V]alues." *Id.* (emphasis added).  Because the Secretary refers generally to Mr. Strand's "misconduct" throughout its decision, it is impossible for this court to determine the extent to which the Secretary's error compromised the Secretary's decision.  *See* J.A. 284 ("This was not [Mr. Strand's] first instance of misconduct leading to harm of others."); J.A. 286 ("Petitioner's misconduct is inconsistent with the Navy's [C]ore [V]alues of honor, courage, and commitment and runs counter to granting relief.").

In a footnote, the majority sidesteps the Secretary's unsupported finding of 1993 misconduct by characterizing the error as "harmless."  Slip op. at 5 n.3.  The majority opines

that "[n]o matter the number of early instances of misconduct, the Secretary's rejection decision is supported by substantial evidence." *Id.* I disagree. We soundly rejected this reasoning in *Strand II*.

In *Strand II*, we explained that the Secretary's decision was based on "the sum of two facts in the record and two policy reasons":  (1) Mr. Strand's history of domestic violence issues; (2) the seriousness of Mr. Strand's 2008 actions; (3) the Navy's Core Values; and (4) the Navy's practice in similar cases. *Strand v. United States*, 706 F. App'x 996, 1000 (Fed. Cir. 2017) ("*Strand II*"). We concluded, however, that the Secretary's finding that Mr. Strand had a history of domestic violence issues was not supported by substantial evidence. *Id.* In response, the government encouraged us to "uphold the Secretary's decision because it sets forth other policy rationales and evidence." *Id.* But we rejected that argument, explaining:

> [B]ecause the Secretary relied on a combination of intertwined reasons, and Mr. Strand has shown that at least one of those reasons is not supported by substantial evidence, the record is not clear as to whether the Secretary would still reach the same conclusion.
>
> . . .
>
> It is an established principle of administrative law that courts should not intrude upon the domain which Congress has exclusively entrusted to an administrative agency, and that a judicial judgment cannot be made to do service for an administrative judgment. Thus, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. Here, the Secretary has not yet considered whether the [Board's] decision to grant Mr. Strand partial relief should be upheld in the absence of any evidence of a longstanding history of FAP involvement and domestic

violence issues.  We find no special circumstances that would support determining this question in the first instance.  Therefore, this case must be remanded back to the Secretary for further review of the [Board's] decision.

*Id.* (internal quotations omitted) (citing *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006); *INS v. Ventura*, 537 U.S. 12, 16 (2002); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)).

The majority theorizes that "the Secretary's thorough consideration of the seriousness of Mr. Strand's criminal misconduct, alone, justifies his decision to deny the requested relief."  Slip op. at 12–13 (explaining that the "heavy weight" the Secretary ascribed to Mr. Strand's actions in 2008 "fully supports denying him credit for six months of service he did not perform").  But the Secretary did not determine that Mr. Strand's 2008 actions were alone sufficient to warrant rejecting the Board's decision.  To the contrary, the Secretary expressly stated that Mr. Strand's "conviction for felony offenses, *as well as his history of performance and conduct*," does not align with the Navy Core Values.  J.A. 283 (emphasis added).

As in *Strand II*, the Secretary's decision is based on an unsupported fact finding.  The Secretary has not yet considered whether it would uphold the Board's decision in the absence of that finding.  Nor has the majority identified any special circumstances that would permit this court to determine this question in the first instance.  This case, therefore, must be returned to the Secretary for further review.  Because the majority upholds the Secretary's flawed decision, I dissent.