# United States Court of Appeals for the Federal Circuit

---

**SAWSTOP HOLDING LLC,**
*Plaintiff-Appellant*

**v.**

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellee*

---

2021-1537, 2021-2105

---

Appeals from the United States District Court for the Eastern District of Virginia in Nos. 1:19-cv-01198-LMB-MSN, 1:20-cv-01212-LMB-MSN, Judge Leonie M. Brinkema.

---

Decided:  September 14, 2022

---

JARED WESTON NEWTON, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC, argued for plaintiff-appellant.  Also represented by DAVID FANNING, SawStop, LLC, Tualatin, OR.

HUGHAM CHAN, Office of the United States Attorney for the Eastern District of Virginia, United States Department of Justice, Alexandria, VA, argued for defendant-appellee.

Also represented by JESSICA D. ABER; KAKOLI CAPRIHAN, MICHAEL S. FORMAN, THOMAS W. KRAUSE, BRIAN RACILLA, FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

_____

Before NEWMAN, LINN, and CHEN, *Circuit Judges.*

LINN, *Circuit Judge.*

SawStop Holding LLC ("Sawstop") appeals from the District Court's grant of summary judgment in favor of the United States Patent and Trademark Office ("PTO") in each of two suits filed by Sawstop to challenge the denial of patent term adjustments ("PTAs") for Sawstop's U.S. Patent Nos. 9,522,476 ("'476 patent") and 9,927,796 ("'796 patent"). For the reasons discussed *infra*, we affirm.

I

To compensate for certain delays during prosecution of patents, Congress added provisions for patent term adjustment in the American Inventors Protection Act of 1999. The Act directs the PTO to grant patent term adjustments to offset three categories of prosecution delay set forth in 35 U.S.C. § 154(b)(1)(A), (B), and (C). Subsection (A) delay accrues when the PTO fails in certain specified ways to timely respond to the applicant. Subsection (B) delay accrues when the PTO fails to issue a patent within a certain time from filing. Neither of those subsections is at issue in this case. At issue in this consolidated appeal is subsection (C) delay, which is codified in 35 U.S.C. § 154(b)(1)(C) and accrues for certain delays associated with appellate review. That provision reads, inter alia:

> Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to . . .
>
>> (iii) appellate review by the Patent Trial and Appeal Board or by a Federal court in

> a case in which the patent was *[1] issued under a decision in the review [2] reversing an adverse determination of patentability,*

> the term of the patent shall be extended 1 day for each day of the pendency of the proceeding, order, or review, as the case may be.

35 U.S.C. § 154(b)(1)(C) (emphasis added). The meanings of the two italicized phrases noted above are at the center of these appeals.

The patents at issue in these cases are both directed to power saws with a safety feature that instantly stops the saw blade upon contact with flesh. Issuance of these patents was delayed by appeals before allowance. For both patents, Sawstop requested PTA for (C) delay under the specific facts surrounding the appeals pursued in each case.

With respect to the application that led to the issuance of the '476 patent, claim 11 was finally rejected by the examiner as being obvious over Figures 7–9 of Lokey, which show a table saw with a rubber block engaging to stop blade rotation, and Figures 1–5 of Lokey, which show a handheld saw with a pivoting cam brake, in combination with the disclosure of Fergle, which teaches an explosive actuator. Sawstop appealed that rejection to the Patent Trial and Appeal Board ("Board").

The Board held that "the examiner [did] not make sufficient findings regarding modifying the structure of Lokey's embodiment of Figures 7–9 to incorporate cam brake members 24 of Lokey's embodiment of Figures 1–5," and thus concluded that "the Examiner [had] not made the initial factual findings required to demonstrate a prima facie case of obviousness of claim 11." J.A. 1826. Nevertheless, the Board held that Lokey Figures 7–9 were sufficient in themselves to teach the pivotable component limitation in claim 11 and render claim 11 obvious in combination

with Fergle.  It thus "AFFIRMED" the rejection of claim 11, J.A. 1829, on "a NEW GROUND OF REJECTION," J.A. 1827.

On remand, Sawstop reopened prosecution to address the new ground of rejection.  It filed several amendments and a request for continued examination ("RCE").  The examiner eventually allowed claim 11, which issued as claim 1 of the '476 patent.  The PTO made no adjustment to the term of the patent for the time spent on the appeal.  Sawstop sought redetermination of that decision.  The PTO denied Sawstop's request.  In doing so, the PTO cited the language of 35 U.S.C. § 154(b)(1)(C)(iii) and held that "the claim was not issued under a decision in the review reversing an adverse determination of patentability" because "the claim remain[ed] under rejection after the Board decision" and "the patent only issue[d] after further prosecution" and amendment.  J.A. 2246–47.

Thereafter, Sawstop filed a complaint in the District Court for the Eastern District of Virginia challenging the PTO's interpretation of 35 U.S.C. § 154(b)(1)(C)(iii) and the denial of PTA under the Administrative Procedure Act ("APA").  Sawstop and the PTO filed cross motions for summary judgment.  The District Court denied Sawstop's motion and granted the government's motion, holding that because claim 11 was subject to a new ground of rejection on appeal, the '476 patent application was not "issued under a decision in the review reversing an adverse determination of patentability," and thus was not eligible for PTA under § 154(b)(1)(C)(iii).  *Sawstop Holding LLC v. Iancu*, 496 F. Supp. 3d 944, 950 (E.D. Va. 2020) ("*'476 Decision*").

With respect to the '796 patent, prosecution culminated in the examiner finally rejecting independent claim 1 on two bases—anticipation and provisional non-statutory obviousness-type double patenting ("double patenting")—and finally rejecting dependent claim 2 for anticipation.  Sawstop appealed all three rejections to the Board.  The Board

affirmed both rejections of claim 1, but reversed the anticipation rejection of claim 2, rendering it patentable.

Sawstop then filed a complaint in the District Court for the District of Columbia challenging only the Board's anticipation rejection of claim 1. The complaint did not address the provisional double patenting rejection. Ultimately, the District Court reversed the anticipation rejection of claim 1. In doing so, it had no reason to and did not opine on the provisional double patenting rejection. On remand, the Board noted the outstanding provisional double patenting rejection, and gave Sawstop two options for allowance: Sawstop could file a terminal disclaimer or cancel claim 1 and rewrite claim 2 as an independent claim. J.A. 877. Sawstop chose the latter.

The Board thereafter issued a notice of allowance of claim 2 and other claims dependent therefrom. J.A. 887–88. Sawstop nevertheless filed an RCE and continued prosecution through several additional amendments of the claims, drawings, and specifications. Eventually, the PTO issued a notice of allowance of the '796 patent. The PTO granted PTA under 35 U.S.C. § 154(b)(1)(C)(iii) for the delay incurred in the successful reversal of the rejection of claim 2 at the Board. But the PTO denied any additional PTA for the delay caused by the appeal of claim 1 to the District Court.

Like it did for the '476 patent, Sawstop filed a complaint in the Eastern District of Virginia challenging that denial. The District Court entertained cross motions for summary judgment, ruling in favor of the PTO. It held that the '796 patent was not entitled to PTA for Sawstop's appeal to the District Court for the District of Columbia because the appeal did not "revers[e] an adverse determination of patentability" as required by 35 U.S.C. § 154(b)(1)(C)(iii), as claim 1 remained subject to the outstanding provisional double patenting rejection and was thus unpatentable both before and after the appeal.

*Sawstop Holding LLC v. Hirshfeld*, No. 1:20-cv-1212, 2021 WL 2021122, at \*6–7 (E.D. Va. May 20, 2021) ("*'796 Decision*").  The District Court also held that because claim 1 was eventually cancelled and thus did not issue in the patent, the '796 patent did not "issue under" an adverse determination of patentability as that phrase is used in 35 U.S.C. § 154(b)(1)(C)(iii) and was not eligible for additional PTA for that independent reason.  *Id.* at \*8.

Sawstop appeals the summary judgments in both cases.  We have jurisdiction over final decisions of the District Court in these patent cases under 28 U.S.C. §§ 1291 and 1295.

II

We review the grant of summary judgment according to the law of the regional circuit.  *Intra-Cellular Therapies, Inc. v. Iancu*, 938 F.3d 1371, 1379 (Fed. Cir. 2019).  The Fourth Circuit reviews the grant of summary judgment de novo.  *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010).

We review the PTO's PTA award under the APA. *Chudik v. Hirshfeld*, 987 F.3d 1033, 1039 (Fed. Cir. 2021); 35 U.S.C. § 154(b)(4)(A).  The agency determination may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Where administrative deference under *Chevron* is inapplicable, *see Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984), or where the application of *Chevron* would make no difference to our interpretation of the statute, "we determine the 'best interpretation' of the statute for ourselves, while giving the agency's position such weight as warranted under *Skidmore*."  *Chudik*, 987 F.3d at 1039 (quoting *Rimini St. Inc. v. Oracle USA, Inc.*, 139 S.Ct. 873, 880 (2019) and citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)).  In this case no deference is necessary under either *Chevron* or

*Skidmore* as the plain language of § 154(b)(1)(C)(iii) compels affirmance.

## III

In considering the meaning of the phrases at issue in 35 U.S.C. § 154(b)(1)(C)(iii), we begin by reference to the plain language of the statute itself. *United States v. Hohri*, 482 U.S. 64, 69 (1987). We recently held that the most natural meaning of the words "appellate review by the Patent Trial and Appeal Board or by a Federal court in a case in which the patent was issued under a decision in the review reversing an adverse determination of patentability," when applied to an examiner's unpatentability ruling, requires that "the patent issue under a Board decision that reversed the examiner's unpatentability ruling or under a court decision that reversed a Board unpatentability ruling in the matter." *Chudik*, 987 F.3d at 1039–40. A "reversal" typically means the undoing by an appellate tribunal of a ruling under review. *See id.* at 1040. "Type C adjustments are for delays that are . . . due to . . . successful appeals." *Supernus Pharms., Inc. v. Iancu*, 913 F.3d 1351, 1353 (Fed. Cir. 2019).

Here, the District Court held that, consistent with our past statutory construction of the (C) delay provision, the "unambiguous language imposes two requirements: that an adverse determination of patentability be reversed, and that the application reviewed in that appeal issue as a patent as a result of that reversal." *'796 Decision*, 2021 WL 2021122, at *5; *'476 Decision*, 496 F. Supp. 3d at 948. The District Court also concluded that the PTO did not demonstrate clear error in judgment in denying the requested PTA under 35 U.S.C. § 154(b)(1)(C)(iii) for the '476 and '796 patents as neither patent met either requirement under the statute. We find no ambiguity in the language of the statute and agree with the conclusions reached by the District Court for the reasons more fully set forth *infra*.

IV

With respect to the '476 patent, Sawstop contends that any examiner rejection overturned on appeal, as was the examiner's rejection of claim 11 in this case, qualifies as "a reversal of a determination of patentability," regardless of any new grounds of rejection issued by the Board. Sawstop argues that the PTO and the District Court improperly interpreted the statutory expression "reverses an adverse determination of patentability" to add a new requirement that a decision in the review reversing an adverse determination of patentability must not subject the claims at issue to a new rejection. According to Sawstop, the PTO reading finds no support in the statutory text nor serves the underlying purpose of compensating the applicant for appellate delays that are not the applicant's fault.

The PTO counters by arguing that there was "no reversal of an adverse patentability determination" because claim 11 was unpatentable before and after the Board's review in the appeal. According to the PTO, the Board's setting aside of the rationale of the examiner's obviousness rejection is irrelevant because it entered new reasoning to sustain that same rejection. It also asserts that because the Board maintained the unpatentability of claim 11, the '476 patent could not have "issued under" the Board's decision.

We do not find Sawstop's argument persuasive. While there is no dispute that the Board cast aside the examiner's basis for rejecting claim 11, the Board in the same review found claim 11 unpatentable, albeit for a different reason. The adverse determination of unpatentability remained before and after the appeal to the Board. The appeal thus resulted in no substantive change in the patentability of claim 11. Such a substantive change is required by the language of the statute itself: the reversal of a "determination of *patentability*" requires a determination that the claim in question is substantively allowable, not just free of a

particular rejection.  *See Mayo Found. for Med. Educ. & Rsch. v. Iancu*, 938 F.3d 1343, 1345 (Fed. Cir. 2019) (noting that Type C delay "provides PTA for each day the application is pending in . . . a *successful appeal* to the Patent Trial and Appeal Board . . . or a federal court" (emphasis added)); *Supernus*, 913 F.3d at 1353 ("Type C adjustments are for delays that are . . . due to *successful appeals*." (emphasis added) (citing 35 U.S.C. § 154(b)(1)(C)(iii))).  We reject Sawstop's attempt to rewrite the statutory text to mandate PTA over reversal of a mere "rejection" or "basis for unpatentability."  Here, the appeal of the determination of patentability of claim 11 was not "successful" as it was not "reversed."  The PTO faithfully applied the statutory text and did not improperly add a new requirement for eligibility for (C) delay.

The District Court also granted summary judgment on an independent basis: that claim 11 of the '476 patent did not "issue under a decision in the review" because after the appeal, the claim was subject to a year of additional substantive prosecution and amendments to address the Board's new ground of rejection.  As can be appreciated from the following side-by-side comparison, the claim as issued was not the same as the claim "under a decision in the review."

| First Amended Claim 11 (Rejected by the PTAB) | Fourth Amended Claim 11 (Issued as claim 1 in the '476 Patent) |
|---|---|
| 1. A table saw comprising: | 11. A table saw comprising: |
| a circular blade configured to cut a workpiece; | a support structure; |
| a detection system configured to detect a dangerous condition; | an arbor block pivotally attached to the support structure; |
| a reaction system adapted to perform a specified action to mitigate possible injury from the dangerous condition; and | a rotatable arbor supported by the arbor block; |
| | a circular blade supported by the arbor; |
| an explosive to trigger the reaction system to perform the specified action when fired. | electronics that detect contact between a person and the blade, where the electronics are connected to the blade through a capacitive coupling, where the electronics include an oscillator that generates an oscillating signal, where the oscillating signal is imparted on the blade through the capacitive coupling; and |
| | an explosive triggerable by the electronics to cause the arbor block to pivot to mitigate possible injury from the contact. |

Sawstop challenges the District Court's reasoning, arguing that the claim would not have issued but-for the successful appeal, and thus the "patent was issued under a decision in the review." Again, we disagree. Under Sawstop's reading, the (C) delay provision could apply when an adverse determination of patentability is overcome on appeal, regardless of substantive amendments made after the appeal to secure allowance. This interpretation effectively reads out the phrase "in which the patent was issued under a decision in the review," and thus cannot be sustained. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quoting 2A N. Singer, Statutes and

Statutory Construction § 46.06, pp. 181–86 (rev. 6th ed. 2000).

The plain language of "issued under a decision in the review" means that at least one claim must "issue[] under" the mandate of the appellate decision. At a minimum, this means that at least one claim that "issued" must have been analyzed by the Board or District Court that issued the "decision in the review." The statutory requirement is not met if the claim that ultimately issues differs substantively from the claim under review.

Because claim 11 of the '476 patent application was subject to an adverse determination of patentability both before and after the appeal, and because the claim issued only after significant substantive post-appeal prosecution and amendment, we affirm the District Court's determination that the '476 patent did not "issue[] under a decision in the review reversing an adverse determination of patentability" as that expression is used in 35 U.S.C. § 154(b)(1)(C)(iii).

V

The plain language of the (C) delay provision also compels affirmance as to claim 1 of the '796 patent.

Sawstop argues that the statute only requires the reversal of "*an* adverse determination of patentability" and the PTO's interpretation improperly replaces the statutory "an" with a requirement that "all" rejections of a particular claim be reversed. Sawstop's argument again confuses specific rejections with the determination of patentability. As noted *supra*, the singular reversal referenced in the statute is the determination of *patentability* of the claim under appellate review, not a basis for a *rejection* or number of rejections.

We also reject Sawstop's contention that the PTO's interpretation of 35 U.S.C. § 154(b)(1)(C)(iii) fails to give effect to the purpose of the statute. According to Sawstop,

the purpose of the statute is to compensate applicants for certain reductions in patent term that are not the fault of the applicant. Such a broad reading overlooks the plain language of the statute, which is not nearly as sweeping as Sawstop contends. Sawstop provides no basis to support its contention that (C) delay was intended to categorically compensate applicants for all appellate delays that were not the applicant's fault. As in *Chudik*, we do not find Sawstop's policy rationale a convincing reason to depart from the plain meaning of the statute. *See Chudik*, 987 F.3d at 1034-35, 1040 (affirming a denial of (C) delay where the *examiner* repeatedly reopened prosecution to withdraw her own decision after the applicant filed a notice of appeal).

Sawstop further contends that we should not read "reversing an adverse determination of patentability" to require that the claim be suitable for allowance following appeal because the separate patent term adjustment provision for (A) delay, § 154(b)(1)(A)(iii), expressly references "allowable claims." Sawstop is incorrect. The use of the phrase "allowable claims" in the (A) delay provision does not implicitly exclude considerations of allowability when reading the phrase "reversing an adverse determination of patentability" in the (C) delay provisions. Those provisions reflect different stages of prosecution during which delay may occur and the different reasons for such delay. The act giving rise to (A) delay is the PTO's failure to act after an appellate decision "in a case in which allowable claims remain in the application." The phrase "allowable claims" in the (A) delay provision refers to the state of the claims when the triggering action—PTO inaction—takes place. This is a wholly different context than that of the (C) delay provision, "reversing an adverse determination of patentability," which accurately reflects that the appellate change of the patentability of the claims is itself the triggering event. The acts triggering (A) delay are thus unrelated to and independent of the acts giving rise to (C) delay, and

may have no bearing on the determination of patentability under review in any particular appeal.

Sawstop argues that the Board's reversal of the examiner's anticipation finding of claim 1 was a reversal of an adverse determination of patentability, and that the presence of the provisional obviousness-type double patenting rejection was inapposite as to whether the Board reversed that adverse determination of patentability. The problem with Sawstop's position is that the PTO's "adverse determination of patentability" of claim 1 of the '796 patent was based on *two grounds*: double patenting *and* anticipation. Sawstop only appealed anticipation without addressing the provisional double patenting rejection. As a result, the District Court for the District of Columbia understandably did not address the double patenting rejection. Sawstop's success in reversing the anticipation rejection left the provisional double patenting rejection in place. Claim 1 of the '796 patent was thus unpatentable both before the appeal (because of anticipation and double patenting) and after the appeal (because of double patenting). Like the '496 patent, the appellate decision did not reverse an adverse determination of patentability. *See '796 Decision*, 2021 WL 2021122, at *6.

Sawstop argues that the remaining rejection did not affect "patentability" because it was non-statutory (because it was an obviousness-type double patenting rejection) and provisional (because the obviousness-rendering reference was an application rather than a patent). Citing *In re Mott*, 539 F.2d 1291, 1296 (C.C.P.A. 1976), Sawstop argues that these characteristics mean that the rejection did not have any force or effect until the obviousness-rendering reference issued and was thus not a rejection that it could appeal or the District Court could affirm or reject. Sawstop is incorrect.

First, Sawstop itself recognized that the rejection had legal effect as it appealed that rejection to the Board and

did not claim it was illusory.  Moreover, Sawstop never explained why it could appeal the rejection to the Board under 35 U.S.C. § 134, but not to the D.C. District Court under 35 U.S.C. § 145.  Second, on remand, claim 1 remained subject to the double patenting rejection, which became non-provisional following issuance of the application on which it was based.  This occurred prior to issuance of the '496 patent.  To overcome that part of the adverse determination of patentability, Sawstop needed to either cancel claim 1 and put claim 2 into independent form (Sawstop's chosen action) or file a terminal disclaimer.  Under either action, the patent was not allowable following the appeal in light of the pending rejection.  For these reasons, we agree with the District Court that the appeal did not reverse an adverse determination of patentability as that expression is used in 35 U.S.C § 154(b)(1)(C)(iii).

We also hold that the District Court was correct that the '796 patent was ineligible for (C) delay for the independent reason that the '796 patent did not issue under a decision in the review.  The '796 patent, as issued, did not include claim 1 as appealed.  Rather, Sawstop *cancelled* claim 1 and replaced it with an independent form of claim 2, which had been allowed in dependent form prior to the appeal.  Sawstop fails to explain how the '796 patent issued under a decision in the review.  Sawstop argues in reply that the statute only requires that the "patent" issue under a decision in the review, not the "claim" that was the subject of the appeal.  However, that does not change the statutory text that the patent must issue under the decision in the review.  Here, the only claim that was subject to the decision under review was claim 1, which was cancelled and thus not part of the issued patent.  The '796 patent therefore did not issue under a decision in the review.

## VI

For the foregoing reasons, we affirm the judgments of the District Court that the PTO did not err in its

interpretations of § 154(b)(1)(C)(iii) and did not violate the APA by refusing to award additional patent term adjustments for (C) delay for the '796 patent and the '476 patent.

## AFFIRMED