NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GENE S. RANA,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2016-2356

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-01060-MCW, Judge Mary Ellen Coster Williams.

---

Decided: November 8, 2016

---

GENE S. RANA, Gurgaon, Haryana, India, pro se.

MOLLIE LENORE FINNAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before TARANTO, LINN, and STOLL, *Circuit Judges.*

PER CURIAM.

Gene Rana, a former captain in the Army, was discharged from active duty in 2004 and honorably discharged from the Army Reserve in 2005. In three proceedings before the Army Board for Correction of Military Records, he sought correction of his military records. Eventually, he brought suit in the United States Court of Federal Claims. Arguing that he was wrongfully discharged in reprisal for whistleblowing, he presented claims under the Military Pay Act and the Military Whistleblower Protection Act as well as various tort claims. The court dismissed Mr. Rana's claims for lack of jurisdiction. We affirm.

I

Mr. Rana enlisted in the Army on November 4, 1990, and he was promoted to first lieutenant on September 27, 1995. He left active duty and was transferred to the U.S. Army Reserve on February 10, 1998. On March 18, 2001, Mr. Rana was ordered to active duty as part of the Active Guard Reserve program for a three-year term with the 323rd Military Intelligence Battalion, 99th Reserve Support Command. He was promoted to captain on March 20, 2001.

The records of Mr. Rana's Board for Correction proceedings in 2004, 2007, and 2009 disclose many of the facts relevant to this case. Mr. Rana received several negative officer evaluation reports in 2001 and 2002, referring to poor interpersonal skills. On September 6, 2002, he made a complaint to the Army's Inspector General alleging reprisal against him for requesting a commander's inquiry into alleged misconduct by another armed services member.

On October 17, 2002, Mr. Rana's battalion commander suspended his security clearance, citing unsatisfactory performance, and ordered him to undergo mental and

physical health evaluations. He was detailed to the 5115th Garrison Support Unit for rehabilitation on October 29, 2002. On December 12, 2002, Mr. Rana's former commander initiated a flag, thereby precluding subsequent duty, while the flag was in force, in the Active Guard Reserve program. Army Regulation 135–18 table 2–6.[1] The stated justification for the flag was multiple periods of absence without leave and the illegal extension of a "sick in quarters" period. According to Board for Correction records and the opinion of the Court of Federal Claims, Mr. Rana received a second flag in early 2003. J.A. 2, 19.

A Board of Inquiry was convened to consider the negative reports concerning Mr. Rana, and it did so on September 20–21, 2003.[2] More than a year later, on October 14, 2004, he was notified that the Board of Inquiry never made a final decision because, before that Board's work was complete, he had been released from active duty in a

---

[1] A flag is an administrative tool used "to prevent and/or preclude . . . [e]xecution of favorable actions to a Soldier who may be in an unfavorable status . . . [or m]ovement of a Soldier when it is in the best interests of the Army for the Soldier to remain in his or her current unit or at his or her current location until cleared of ongoing actions." Army Regulation 600–8–2 ¶ 2–1(a). Flags are lifted when the disciplinary or administrative action is concluded. *Id.* ¶ 2–1(c).

[2] A Board of Inquiry is used in the Army to establish and record facts related to an officer's alleged misconduct, substandard performance of duty, or conduct incompatible with military service. Army Regulation 600–8–24 ¶ 4–6. Based on findings of fact, the Board makes a recommendation for the officer's disposition. *Id.*

separate administrative action.[3]  Specifically, Mr. Rana was told on March 1, 2004, that he would be released from active duty because the flags served as nonwaivable disqualifications from the Active Guard Reserve program, and he was actually released from active duty on March 17, 2004.  He was then transferred to the U.S. Army Control Group.  Mr. Rana was notified on March 24, 2005, that a second Board of Inquiry had recommended his discharge from the Control Group, and he was honorably discharged from the Control Group, and hence from the Army Reserve, the next day.

The Board for Correction considered Mr. Rana's challenges to his treatment, which sought correction of his records, in three separate proceedings.  Dissatisfied with the results of the proceedings, the last of which was announced in July 2009, Mr. Rana filed a complaint in the Court of Federal Claims on September 22, 2015, alleging that he had been wrongfully discharged because of his actions as a military whistleblower.  Compl. at 2–4.  According to his complaint, the negative records were fabricated in response to prior whistleblowing activities and it was the fabricated records that ultimately led to his 2004 and 2005 discharges.  Compl. at 2–3.  Mr. Rana sought back pay, correction of military records, and $10,000,000 in compensation for pain and suffering, loss of livelihood, and defamation.  Compl. at 12–13.

On the government's motion, the Court of Federal Claims dismissed Mr. Rana's claims for lack of subject-matter jurisdiction.  Mr. Rana appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

---

[3]  Later, the Inspector General concluded that the Army committed certain errors in the Board of Inquiry proceeding but that the errors did not impair Mr. Rana's ability "to be heard and to protect [his] rights at the Board of Inquiry."  J.A. 54.

## II

We review de novo the decision to dismiss a case for lack of subject-matter jurisdiction. *E.g.*, *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000). "[W]e accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in its favor." *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

For the Court of Federal Claims to have jurisdiction over Mr. Rana's claims, the claims must come within the Tucker Act. The Tucker Act provides as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). That statute "does not create any substantive right enforceable against the United States for money damages"; such a right must be found outside the Tucker Act itself. *United States v. Testan*, 424 U.S. 392, 398 (1976).

## A

At the outset, we reject Mr. Rana's contention, which relies on *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746 (Fed. Cir. 1988), that the Court of Federal Claims improperly dismissed his case "without affording [him] a fair hearing of the case." Petitioner's Br. 4. Here, unlike in *Reynolds*, it is clear that the plaintiff "was afforded an opportunity to establish . . . jurisdictional facts before dismissal." *Reynolds*, 846 F.2d at 748. Mr. Rana was given an adequate opportunity to be heard on the jurisdictional issues: he was

allowed to file four documents opposing the government's motion to dismiss. J.A. 8–9. Mr. Rana complains that he was not allowed to present evidence about the merits of his claims, but fair process as to the jurisdictional motion required only that he have an adequate opportunity to present evidence bearing on jurisdiction. *Reynolds*, 846 F.2d at 748. He had that opportunity.

B

Mr. Rana challenges the jurisdictional dismissal of his claim under the Military Pay Act, 37 U.S.C. § 204. The Tucker Act generally covers Military Pay Act claims where the plaintiff alleges "that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). But there is an additional requirement for the Court of Federal Claims to have jurisdiction: such a claim must be filed in a timely fashion under 28 U.S.C. § 2501, which states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (holding that § 2501 is jurisdictional and not subject to equitable tolling). A discharge claim seeking back pay "accrues at the time of the plaintiff's discharge." *Martinez*, 333 F.3d at 1304.

The Court of Federal Claims dismissed the claim here for untimeliness. We agree that Mr. Rana's claim was untimely. Contrary to Mr. Rana's contention, the six-year clock for challenging his active-duty and Reserve discharges in 2004 and 2005 began running when they occurred, well before the Board for Correction rendered its decision in 2009 (and denied reconsideration in 2010 and 2011). "This court and the [Court of Federal Claims] have frequently addressed and rejected the argument that the

cause of action for unlawful discharge does not accrue until the service member seeks relief from a correction board and the correction board enters a final decision denying relief." *Martinez*, 333 F.3d at 1304. Seeking the merely permissive administrative remedy available from a correction board is not a prerequisite to filing a suit challenging a discharge, and so the six-year clock begins to run without waiting for the correction board. *Id.*; *see also Heisig v. United States*, 719 F.2d 1153, 1155 (Fed. Cir. 1983). Mr. Rana's claims accrued fully by 2005, which is far more than six years before he filed this suit in 2015.

Mr. Rana argues that his claims nevertheless are not barred by the statute of limitations because he recently learned of new relevant evidence. He invokes the doctrine under which accrual of a claim is sometimes suspended "until the claimant knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319. But that doctrine is "strictly and narrowly applied." *Id.* The plaintiff "must either show that [the] defendant has concealed its acts with the result that the plaintiff was unaware of their existence or it must show that its injury was inherently unknowable at the accrual date." *Id.* Mr. Rana has not made either showing so as to make the 2015 suit timely.

Mr. Rana points to some evidence about what the Board for Correction believed regarding the chain of command and about the vacatur of the September 2003 Board of Inquiry decision. But neither point undermines the simple facts that his claim addresses his discharge, not various military board decisions, and he knew that he was discharged from active duty in 2004 and believed that discharge to be wrongful at the time (hence his institution of the 2004 Board for Correction review). We rejected an accrual-suspension argument in *Martinez* where the plaintiff knew, "[a]s of the date of his discharge from active duty, . . . that he had been discharged and, as far as

he was concerned, his discharge had been unlawfully procured." 333 F.3d at 1319. There is no basis for a different conclusion here. Dismissal of the Military Pay Act claim was therefore proper.[4]

## C

Mr. Rana challenges the jurisdictional dismissal of his claim under the Military Whistleblower Protection Act, which prohibits reprisal against a member of the armed forces for making certain communications to an Inspector General. 10 U.S.C. § 1034(b)(1). To come within the Tucker Act, the Military Whistleblower Protection Act would have to be money-mandating, *i.e.*, carry a monetary-compensation remedy for its violation. *E.g.*, *Moden v. United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005). The Court of Federal Claims concluded that this whistleblower statute is not money-mandating. J.A. 5.

We agree. We drew the same conclusion a few years ago in a non-precedential decision, where we relied on the fact that the Military Whistleblower Protection Act provides for a specific non-monetary remedy—correction of the record of a prohibited personnel action—but does not provide for monetary relief. *Lewis v. United States*, 476 F. App'x 240, 244 (Fed. Cir. 2012); *see* 10 U.S.C. § 1034(g)(5) ("The Secretary concerned shall order such action . . . as is necessary to correct the record of a [prohibited] personnel action."). We see no reason to draw a different conclusion now. Dismissal of Mr. Rana's reprisal claim was therefore proper.

---

[4]   Mr. Rana makes various factual assertions in the Memorandum in Lieu of Oral Argument that he submitted to us. We see nothing in those assertions, which appear to bear on whether he was properly discharged, that would satisfy the standard for suspending the accrual of his claim for timeliness purposes.

## D

Mr. Rana does not explicitly appeal the dismissal of his claims for loss of livelihood, defamation of character, and pain and suffering. Regardless, we see no error in that dismissal. Such claims, "sounding in tort," 28 U.S.C. § 1491(a)(1), are outside the Tucker Act's jurisdiction. *See U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1372 (Fed. Cir. 2013).

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Federal Claims.

No costs.

**AFFIRMED**