# United States Court of Appeals for the Federal Circuit

---

**JOSIAH E. NICELY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1856

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-01264-DAT, Judge David A. Tapp.

---

Decided: January 20, 2022

---

CHARLES W. GITTINS, Lake Frederick, VA, argued for plaintiff-appellant.

JOSEPH ALAN PIXLEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE.

---

Before MOORE, *Chief Judge*, PROST and O'MALLEY, *Circuit Judges*.

Opinion for the court filed PER CURIAM.

*Circuit Judge* O'MALLEY concurs in the result.

PER CURIAM.

Josiah Nicely appeals a decision of the United States Court of Federal Claims ("Claims Court") that: (1) dismissed Count II of Nicely's complaint, which the Claims Court concluded was predicated on an alleged violation of the Military Whistleblower Protection Act ("MWPA"), 10 U.S.C. § 1034, over which the court lacked subject matter jurisdiction; and (2) granted the government's cross-motion for judgment on the administrative record as to all remaining issues. *Nicely v. United States*, 147 Fed. Cl. 727 (2020). One such issue was Nicely's contention that the Board for Correction of Naval Records' ("BCNR" or "Board") denial of his request for correction of his military record must be set aside because the BCNR contained unauthorized members. Specifically, Nicely asserts that the BCNR panel that considered his request contained retired military members who did not qualify as "civilians of the executive part" of the Navy as 10 U.S.C. § 1552(a)(1) requires.

On appeal, Nicely challenges the Claims Court's dismissal of Count II and its determination that the BCNR's long-standing practice of permitting retired members of the military to serve as members of the Board does not violate 10 U.S.C. § 1552(a)(1)'s requirement that the Secretary of the Navy "act[] through boards of civilians of the executive part of that military department." For the following reasons, we affirm.

## I. BACKGROUND

Nicely served in active duty in the United States Marine Corps ("USMC") for more than ten years. *Nicely*, 147 Fed. Cl. at 731. After an incident in January 2010, where Nicely was arrested and charged with driving under the influence, Nicely went through a series of disciplinary

proceedings and was ultimately involuntarily discharged in October 7, 2011.

Three things of note occurred between Nicely's arrest and discharge. First, the state court dismissed the driving-under-the-influence charge, and Nicely was only convicted of misdemeanors that did not involve driving while impaired. Second, during the course of non-judicial disciplinary proceedings, among other statements regarding the circumstances of his arrest, Nicely wrote a letter to his Commanding General admitting to having driven under the influence on January 22, 2010. Third, in February 2011, after the Board of Inquiry ("BOI") proceedings had begun, but before they completed in April 2011 with a discharge recommendation, Nicely filed a reprisal complaint under the MWPA. The complaint was investigated by the Marine Corp IG, Nicely was interviewed during the course of the investigation, and he provided information regarding his arrest to the IG at that time. Nicely's complaint was dismissed in February 2012 based on an IG finding that there was "no indication that any actions toward Capt. Nicely occurred as a result of what he considered Protected Communications." J.A. 137.

Nicely petitioned the BCNR to correct his military record, alleging various errors in his separation. Specifically, Nicely requested that the BCNR correct his military record by: (1) directing removal of the January 2010 fitness report relating to his arrest; (2) setting aside his administrative separation from the USMC for misconduct, as well as the Board of Inquiry ("BOI") decision that led to that separation; (3) reinstating Nicely to active duty with back pay; and (4) ordering any additional relief. *Nicely*, 147 Fed. Cl. at 736. In August 2015, the BCNR found Nicely's arguments and evidence insufficient to establish the existence of material error or injustice and therefore denied his petition for relief. *Id.*

Nicely subsequently filed suit in the Claims Court, challenging the BCNR's decision. Nicely purported to ground his claims on the Military Pay Act ("MPA"). As relevant to this appeal, Nicely alleged in Count II that his discharge must be set aside because it was predicated, in part, on confidential statements he had made to the IG during the investigation of his MWPA claim. He separately asserted that some members of the BCNR were not statutorily authorized to serve. The court remanded the case to the BCNR twice for further consideration.

First, the court ordered the BCNR to explain to what extent, if any, Nicely's statements to the IG factored into his discharge recommendation. The BCNR responded upon remand that Nicely's disclosures to the IG were irrelevant to its recommendation because Nicely had independently admitted to his supervising officer in writing that he had, in fact, been driving while impaired in January 2010.

Second, in December 2018, the court remanded the matter for the BCNR to consider Nicely's claim that certain retired military members—specifically retired military officers—are precluded from sitting on military correction boards under 10 U.S.C. § 1552(a). *Id.* at 736. After consultation with the counsel's office at the Department of Defense ("DoD") on that question, a three-member panel of the Board with no prior military service considered the issue. In a June 2019 decision, the Board found that "none of the provisions in the BCNR's authorizing statute and governing regulations expressly define 'civilian,' and thus do not expressly exclude retired military members from those civilians who may serve as Board members." *Id.*; J.A. 334. The Board concluded that "the use of retired military members was not in error or unjust," and therefore denied Nicely's request for relief. *Nicely*, 147 Fed. Cl. at 737. The case was again returned to the Claims Court.

In the March 27, 2020 decision at issue on appeal, the Claims Court granted the government's motion to dismiss Count II of the complaint for lack of subject matter jurisdiction. *Id.* at 738. Citing this court's decisions in *Bias v. United States*, 722 F. App'x 1009, 1013 (Fed. Cir. 2018), and *Rana v. United States*, 664 F. App'x 943, 947 (Fed. Cir. 2016), the court held that it "lacks jurisdiction to resolve MWPA claims, such as Nicely's standalone claim as pleaded in Count II." *Id.* Although Nicely insisted his claim was one under the MPA and not the MWPA, the court concluded that the substance of his allegations belied that assertion. The court concluded that, once properly characterized based on the real substance of his allegations, the court lacked jurisdiction to consider Count II. The court also rejected Nicely's argument that retired military officers are not "civilians" and therefore cannot serve as members of the BCNR. In reaching its conclusion, the Claims Court applied the framework set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). After first determining that Congress had not spoken to the issue, the court concluded that, looking to the statutory text, dictionary definitions, and language used elsewhere in Title 10, "it was reasonable for the BCNR to conclude that Congress intended the term 'civilian' to have an ordinary meaning that includes former and retired military members." *Nicely*, 147 Fed. Cl. at 741. The court, thus, said it would defer to the BCNR's conclusion on the constitution of the Board. The court then denied Nicely's remaining claims, finding that he failed to meet his burden of establishing that the BCNR's determinations were arbitrary, capricious, or contrary to law.

Nicely timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

On appeal, Nicely argues that the Claims Court erred when it: (1) dismissed Count II of his complaint for lack of

subject matter jurisdiction and (2) agreed with the BCNR that retired military officers qualify as "civilians" within the meaning of 10 U.S.C. § 1552(a)(1) and therefore are permitted to serve on correction boards. He does not appeal any other issues decided by the Claims Court.

## A. Subject Matter Jurisdiction

We dispense with the first issue quickly. We review a Claims Court decision dismissing for lack of subject matter jurisdiction de novo. *Diaz v. United States*, 853 F.3d 1355, 1357 (Fed. Cir. 2017). Nicely bears the burden of establishing jurisdiction by a preponderance of the evidence. *Id.* Although Nicely denies that Count II of his complaint sought to state a cause of action under the MWPA and submits that his claims were entirely based on the MPA, we agree with the Claims Court that this argument is "inexplicabl[e]" given that he invokes the MWPA no less than three times in Count II. *Nicely*, 147 Fed. Cl. at 738 n.7.

We agree with the Claims Court that we must look to the substance of the allegations in a complaint when assessing the scope of the Claims Court's (and our) jurisdiction over those claims, not the label a claimant places on them. The entire predicate for Count II of Nicely's complaint is that the BCNR relied upon certain confidential disclosures to the IG when making its recommendation for discharge to the Secretary, which the MWPA prohibits. There is no way to read his claim other than one directly asserting a violation of the MWPA. The MWPA establishes a detailed, comprehensive scheme for addressing whistleblower issues within the military. 10 U.S.C. § 1034(a)–(h). Reviewing this statutory scheme, we have held that the MWPA is not a money-mandating statute and that the Claims Court does not possess jurisdiction to entertain MWPA claims. *Rana*, 664 F. App'x at 948 (citing *Lewis v. United States*, 476 F. App'x 240, 244 (Fed. Cir. 2012)); *Bias*, 722 F. App'x at 1013. The Claims Court correctly concluded that Nicely's claim in Count II arose under the

MWPA and not the MPA and that the court, therefore, lacked jurisdiction to consider Nicely's claim.

## B.  Interpretation of 10 U.S.C. § 1552(a)(1)

As to the second issue, we review a Claims Court decision granting or denying a motion for judgment on the administrative record without deference—meaning that we apply the same standard as the trial court. *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). We "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.*

Resolution of Nicely's second issue on appeal requires us to consider what appears to be an issue of first impression: whether permitting retired military officers to sit on the BCNR violates 10 U.S.C. § 1552(a)(1). Nicely maintains that it does, and argues that his original BCNR was improperly constituted because it included retired commissioned officers as members. The government admits that § 1552 does not define the term "civilian," but points out that it does not expressly exclude former commissioned military officers from serving on correction boards. According to the government, the BCNR correctly interpreted § 1552(a)(1) to permit retired officers to serve on correction boards, and the Claims Court was correct to defer to that conclusion under *Chevron*. We conclude that the best interpretation of § 1552(a)(1) is the interpretation the BCNR adopted, so we need not decide whether or how the *Chevron* framework applies here. *See, e.g.*, *Chudik v. Hirshfeld*, 987 F.3d 1033, 1039 (Fed. Cir. 2021).

### 1.  Statutory Text

When interpreting a statute, we "begin with the language employed by Congress." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (internal quotation marks and citation omitted). Section 1552, provides in relevant part:

> The Secretary of a military department may cor-
> rect any military record of the Secretary's depart-
> ment when the Secretary considers it necessary to
> correct an error or remove an injustice. Except as
> provided in paragraph (2), such corrections shall be
> made by the Secretary acting through *boards of ci-*
> *vilians* of the executive part of that military depart-
> ment.

10 U.S.C. § 1552(a)(1) (emphasis added). The statute
therefore requires that the Secretary of a military depart-
ment, when exercising discretion to correct military rec-
ords, must "act through boards of civilians of the executive
part of that military department." *Id.*

The BCNR is under the direction and supervision of the
Assistant Secretary of the Navy (Manpower & Reserve Af-
fairs) and is part of the organization that is the Navy.
Nicely does not dispute that the members of his BCNR
panel were from the "executive part" of that military de-
partment. Instead, Nicely's argument on appeal is that the
BCNR panel that considered his claims was not composed
solely of "civilians" because, in Nicely's view, a "retired mil-
itary officer" is a "current member of the military service"
and therefore cannot be a "civilian" as that term is used in
§ 1552(a)(1). *See* Appellant's Br. 5.

Congress did not explicitly define "civilians" in the text
of § 1552(a)(1). That a term is not defined in a statute does
not make it indecipherable, however. It is well established
that "the legislature's failure to define commonly-used
terms does not create ambiguity, because the words in a
statute 'are deemed to have their ordinarily understood
meaning.'" *Executive Jet Aviation, Inc. v. United States*,
125 F.3d 1463, 1468 (Fed. Cir. 1997) (quoting *Koyo Seiko
Co. v. United States*, 36 F.3d 1565, 1571 n.9 (Fed. Cir.
1994)). The question we must ask is whether well-known
principles of statutory interpretation reveal the meaning of
any such silence. *Burns v. United States*, 501 U.S. 129, 136

(1991) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.").

In the absence of an express definition, we first give undefined terms their ordinary meaning. *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."); *Richards v. United States*, 369 U.S. 1, 9 (1962) ("[W]e must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used."). This "ordinary meaning may be informed through the use of dictionaries." *Gazelle v. Shulkin*, 868 F.3d 1006, 1011 (Fed. Cir. 2017) (citing *United States v. Rodgers*, 466 U.S. 475, 479 (1984)).

Modern dictionaries define the term "civilian" as a person who is not on active duty in the armed services. *See* Webster's New World College Dictionary (4th ed. 2010) (defining a civilian as "any person not an active member of the armed forces"); Oxford English Dictionary (2d ed. 1989) ("A person who is not professionally employed in the armed forces; a non-military person"); Black's Law Dictionary (11th ed. 2019) ("A person not serving in the military."). As the Claims Court explained, these definitions differentiate between persons "on active duty in the armed services" and those who are not. *Nicely*, 147 Fed. Cl. at 741. This differentiation is consistent with how the terms "member[s] of the armed forces" and "active duty" are used elsewhere in Title 10. *Id.* For example, the phrase "member[s] of the armed forces" is defined in Title 10 as "(A) a member of the armed forces who is serving active duty, (B) a member of the National Guard who is serving on full-time National Guard duty, or (C) a member of a Reserve component while performing inactive-duty training." 10 U.S.C. § 976(a)(1). Elsewhere in Title 10, "active duty" is defined as "full-time duty in the active military service of the United States." 10 U.S.C. § 101(d)(1). Taken together, these definitions suggest that a "retired" member of the military—a person who

is not serving in full-time active duty—is not a "member of the armed forces" and therefore would not normally qualify as a "civilian."

The broader statutory context confirms this definition. There is a "presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Elsewhere in Title 10, Congress expressed its understanding that former and retired members of the military are "civilians" by creating post-retirement waiting periods before such personnel could be appointed to certain high-level civilian positions. For example, 10 U.S.C § 113(a), which provides that the Secretary of Defense must be "appointed from civilian life," excludes from eligibility any person who is "within seven years after relief from active duty as a commissioned officer of a regular component of an armed force." *See also* 10 U.S.C. § 134(a) (excluding from eligibility for Under Secretary of Defense for Policy persons who are "within seven years after relief from active duty as a commissioned officer of a regular component of an armed force"). Similar requirements exist for the Secretaries of the Navy and Army. *See* 10 U.S.C. §§ 8013(a), 7013(a) (providing for appointment from "civilian life" after five years of relief from active duty). And, Congress imposed similar restrictions on the appointment of judges for the United States Court of Appeals for the Armed Forces. *See* 10 U.S.C. § 942(b)(1), (b)(4) (providing that "[e]ach judge shall be appointed from civilian life by the President," but prohibiting appointment of persons who are within seven years after retirement from active duty as a commissioned officer).

The express statutory exclusion of retired military officers from appointment to certain roles within the civil service for a specified period of time after active service ends implies that those individuals would have been eligible for service as civilians *immediately upon retirement* but for the statutorily-imposed "cooling-off" period. If Congress had wanted to include a similar "cooling-off" period for

service on correction boards, it could have done so expressly. The absence of such a period in § 1552(a)(1) strongly suggests that retired military officers qualify as "civilians" for purposes of the BCNR upon retirement and commencement of service in the executive department of the Navy. The use of the term "civilian" throughout Title 10 to include former and retired members of the military is consistent with the ordinary meaning of "civilians"—that is, a person who is "not serving on active duty in the military." *See Nicely*, 147 Fed. Cl. at 741; JA. 335.

### 2. Relevant Case Law

As he did before the Claims Court, Nicely cites *Weiss v. United States*, 408 F.2d 416, 421 (Ct. Cl. 1969), and *Proper v. United States*, 139 Ct. Cl. 511, 526 (1957), for the proposition that retired military members are not civilians within the meaning of 10 U.S.C. § 1552(a). He also cites several cases in the military retirement pay context for the proposition that "retired officers are in the military service of the government." Appellant Br. 9 (quoting *United States v. Tyler*, 105 U.S. 244, 245 (1882)). None of these cases persuasively support Nicely's position, however.

At the outset, neither *Proper* nor *Weiss* addressed whether retired service members can serve on correction boards. Instead, both cases were directed to the question of whether the Secretary of a military branch could overrule the substantiated findings of the correction board on the advice of others. *See Proper*, 139 Ct. Cl. at 526 (explaining that the Secretary of the Army could not disregard the findings of the correction board in favor of the contrary advice of a retired military officer because corrections were to be decided by the Secretary after considering the BCNR's recommendation, not the recommendations of others); *Weiss*, 408 F.2d at 421 (finding that the Secretary's rejection of the BCNR's recommendation was unjustified, where the Board's recommendation was supported by the record

and the Secretary instead chose to follow the advice of an active duty naval officer).

We confirmed as much in *Strickland v. United States*, 423 F.3d 1335 (Fed. Cir. 2005), where we addressed the scope of § 1552(a).  In *Strickland*, "[t]he sole issue [was] whether the Assistant Secretary acted outside his statutorily-granted powers when he rejected the recommendation of the [BCNR]."  *Id.* at 1337.  We concluded that "he did not, and that the trial court erred in interpreting § 1552(a) to mandate that the Assistant Secretary cannot reject a Board recommendation."  *Id.*  In reaching this conclusion, we clarified "the point of *Proper* and *Weiss*: Congress wanted final decisions on records corrections to be made by civilians in each military department, not uniformed officers.  In both cases the Secretary effectively deferred to a professional military officer over the reasonable decision of the Board."  *Id.* at 1342.  Because "no uniformed officer was involved in any decision-making" in *Strickland*, and it was the Secretary's own decision to reject the BCNR's recommendation, we concluded that neither *Proper* nor *Weiss* was applicable.  *Id.*

More recently, in *Strand v. United States*, 951 F.3d 1347 (Fed. Cir. 2020), we again clarified that *Proper* and *Weiss* "have no application without military officer involvement."  *Strand*, 951 F.3d at 1353 (internal quotation marks and citation omitted).  In *Strand*, the BCNR issued a decision that recommended granting the appellant's request for correction.  *Id.* at 1349.  The Secretary of the Navy twice rejected that recommendation.  *Id.*  Later, the BCNR's then-Executive Director, Robert O'Neill, who was a "retired Navy [Judge Advocate General]" attorney, wrote a memorandum requesting that the Secretary of the Navy review the 2014 BCNR decision, but "without advocating a particular outcome of that review."  *Id.* at 1352–53.  After finding that *Proper* and *Weiss* were "inapplicable" to Strand's case—because the individuals giving advice to the

Secretary in *Proper* and *Weiss* were actual "uniformed military officers"—we explained:

> Although BCNR Executive Director O'Neill is a *retired military officer*, his memo requesting Secretarial review does not constitute undue officer influence.  Mr. O'Neill was a *civilian employee* of the Navy at the time he wrote the memo, and his memo merely states that the Secretary "should review this case for decision," without advocating a particular outcome of that review.

*Id.* at 1353 (emphases added) (citations omitted).  We ultimately held that the "Secretary acted within his discretion in rejecting the recommendation of the Board."  *Id.* at 1357.

Although *Strand* did not address the precise issue presented in this appeal—whether retired military members can serve on military correction boards—our analysis in that case supports our interpretation here.  In particular, our indication that O'Neill, who was a retired military officer, was a "civilian employee" of the Navy, rather than a "uniformed military officer," supports the notion that a retired military officer serving on the BCNR qualifies as a civilian.  *See id.* at 1353.

Finally, Nicely cites several cases that refer to retired military officers as members of the military.  *See Tyler*, 105 U.S. at 245 ("It is impossible to hold that men who are by statute declared to be a part of the army, who may wear its uniform, whose names shall be borne upon its register, who may be assigned by their superior officers to specified duties by detail as other officers are, . . . are still *not* in the military service"); *United States ex rel. Pasela v. Fenno*, 167 F.2d 593, 595 (2d Cir. 1948) (finding that Fleet Reservists qualify as members of the "naval forces" as they "remain subject to call to active duty"); *Hostinsky v. United States*, 292 F.2d 508, 509–10 (Ct. Cl. 1961) (noting that a retired officer of the Navy, receiving longevity retired pay, could not hold another office in the civil service entitling

him to compensation); *Lemly v. United States*, 109 Ct. Cl. 760, 763 (1948) (stating that an officer retired from active duty, who is receiving retirement pay, "is still subject to call to active duty" and "is still an officer in the service of his country"); *McCarty v. McCarty*, 453 U.S. 210, 211 (1981) (concluding that, upon dissolution of marriage, "federal law precludes a state court from dividing military non-disability retired pay pursuant to state community property laws").[1]

As the Claims Court correctly noted, however, these cases "provide no support for [Nicely's] position as they address narrow issues of military retired pay, the now-repealed prohibition on dual office holding, and court-martial jurisdiction of former military members." *Nicely*, 147 Fed. Cl. at 741 n.12. The fact that one can be subject to certain restrictions based on his or her former military and current pay status does not answer the question whether that retiree is a civilian under § 1552(a)(1). Importantly, none of the cases on which Nicely relies stand for

---

[1]   At oral argument, counsel for Nicely cited a recent decision from the United States Court of Appeals for the Armed Forces for the general proposition that retired members of the military who continue to receive pay remain in the military service of the government. Oral Arg. at 9:33–10:21, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1856_07062021.mp3 (citing *United States v. Begani*, Nos. 20-0217, 20-0327, 2021 WL 2639319 (C.A.A.F. Jun. 24, 2021)). But *Begani*—which found that members of the Navy's Fleet Reserve could be subject to court-martial jurisdiction—did not consider or otherwise address the question of whether retired military officers acting as civilian employees of a military organization can serve on military correction boards. *See Begani*, 2021 WL 2639319, at *1. And, even if it had, it would not bind this court.

the proposition that a properly appointed member of the civil service from the executive part of the military organization is prohibited from serving on a correction board merely because they are also retired military.

Accordingly, we hold that the term "civilians" in 10 U.S.C. § 1552(a)(1) includes former and retired members of the military serving in the civilian arm of the military organization at issue. We therefore agree with the Claims Court that the BCNR did not act contrary to law or regulation by permitting retired military officers to serve as members of the Board, albeit based on a different legal rationale. *Id.* at 742.

## III. CONCLUSION

We have considered Nicely's remaining arguments and find them unpersuasive. Accordingly, we affirm the decision of the Claims Court.

## AFFIRMED

### COSTS

No costs.